# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 17, 2015

v

LAKEISHA NICOLE GUNN,

Defendant-Appellant.

No. 318065
Wayne Circuit Court
LC No. 13-004566-FH

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

A jury convicted defendant of second-degree arson, MCL 750.73(1) (Count I), and placing an offensive or injurious substance in or near real property with intent to injure or damage property, MCL 750.209(1)(b) (Count II). The trial court sentenced defendant as an habitual offender, third offense, MCL 769.11, to a prison term of 15 to 30 years for each conviction, to be served concurrently. Defendant appeals as of right. We affirm defendant's convictions, but vacate her sentence on count II and remand for resentencing on that count only.

During the early morning hours of April 23, 2013, a container of gasoline was placed on the front porch of Shawniqua McGowan's house, and then ignited, causing a fire. McGowan was defendant's former girlfriend. Evidence indicated that defendant had sent McGowan threatening text messages shortly before the fire. McGowan and her roommate, Dennis McDonald, both testified that they observed defendant and another female, identified as Angelita Haywood, exit a car and walk toward the porch with something in their hands just before the fire started. In a statement to the police, defendant admitted being with Haywood at McGowan's residence when Haywood placed a container of gasoline on McGowan's porch, but defendant denied being complicit in starting the fire. Defendant claimed that she fled the scene when Haywood ignored defendant's efforts to dissuade Haywood from starting a fire.

## I. SUFFICIENCY OF THE EVIDENCE FOR COUNT II

Defendant argues that she was improperly convicted of placing an explosive substance in or near real property, contrary to MCL 750.207(2)(b), because gasoline is not an "explosive." Defendant was not convicted of that offense. Defendant's misunderstanding apparently stems from the judgment of sentence, which identifies the conviction offense on Count II as placing an explosive substance in or near real property, citing MCL 750.207(2)(b). The record indicates, however, that defendant was charged with and convicted of placing an offensive or injurious

-1-

substance in or near real property, contrary to MCL 750.209(1)(b). The jury was instructed on that crime and the jury returned a verdict on that crime. And, because gasoline qualifies as an offensive and injurious substance within the meaning of MCL 750.209(1), *People v Hill*, 257 Mich App 126, 128, 147-149; 667 NW2d 78 (2003), the evidence supports defendant's conviction under MCL 750.209(1)(b).

At sentencing, however, defendant's conviction for count II was inaccurately listed on the sentencing information report as placing explosives on or near property, contrary to MCL 750.207(2)(b), and the parties and the trial court proceeded as if defendant had been convicted of that offense, which is the offense identified on defendant's judgment of sentence. Because the trial court sentenced defendant under the mistaken belief that he had been convicted of placing explosives on or near property, pursuant to MCR 7.216(A)(7), we vacate defendant's sentence for Count II and remand for sentencing on the correct conviction of placing an offensive or injurious substance in or near real property, contrary to MCL 750.209(1)(b).

## II. OPINION TESTIMONY

Defendant argues that she is entitled to a new trial because the trial court improperly allowed Fire Department Lieutenant Hill-Harris to give his opinions regarding several aspects of the case, most of which did not involve his expert opinion on the origin and cause of the fire. The trial court sustained defendant's objection to Lieutenant Hill-Harris's testimony that defendant was a willing participant in the crimes and that defendant sent McGowan text messages that contained death threats. Defendant sought no further action from the trial court and received no adverse decision regarding that testimony. Thus, there is no error to review.

Although defendant objected to the lieutenant's testimony that his partner determined that there was probable cause to arrest defendant, he did so only on the basis of speculation and "lack of personal knowledge." An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Defendant incorrectly states that she objected to the lieutenant's testimony that McGowan and McDonald were the "best witnesses"; defendant objected only to the lieutenant's testimony about why people would give inconsistent testimony, a ground not asserted on appeal. Therefore, these claims are unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

### A. THE WITNESSES WERE CREDIBLE AND DEFENDANT WAS GUILTY

In response to the prosecutor's inquiry, Lieutenant Hill-Harris explained that once the origin of the fire was determined, he "moved onto" investigating the crime in his police capacity and interviewed witnesses. Defendant argues that Lieutenant Hill-Harris impermissibly expressed his opinion regarding the truthfulness of McGowan's and McDonald's accounts during the following emphasized remarks:

> *Q*. And let's start with that. What witnesses did you interview?

> *A*. The individuals who were present at the time of the fire were the first witnesses that I interviewed and *they were the best witnesses*.

-2-

* * *

*Q*. When you say best witnesses, why do you say that?

*A*. An eyewitness is always your best witness. They actually saw things as it developed. First responder[s] are also great witnesses because they respond to many different instances of this nature and there [sic] are aware—their perception of events, because they respond to so many emergencies, can often times be more complete.

* * *

*Q*. Did you find—the information that you received from both Miss McGowan and Mr. Powell consisted [sic] with visibility of what you saw on the porch?

*A*. *It was consistent*. [Emphasis added.]

In response to the prosecutor's inquiry, Lieutenant Hill-Harris also testified that he believed that they had probable cause to arrest defendant.

It is improper for a witness to provide an opinion regarding the credibility of another witness because credibility is a determination for the trier of fact. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Contrary to what defendant argues, however, the challenged testimony was not an "expert opinion" that the witnesses were credible or that defendant was guilty. The lieutenant explained that he used the term "best witnesses" simply because they were eyewitnesses to the event. Further, the lieutenant did not offer his opinion that McGowan and McDonald were themselves credible. He simply stated that the information they provided was consistent with what he observed during his investigation. The jury remained free to determine on its own whether the consistent accounts of McGowen and McDonald rendered them credible.

To the extent that the challenged testimony violated the aforementioned rule, defendant has not established that any error affected her substantial rights. *Carines*, 460 Mich at 763-764. The jury was aware that Lieutenant Hill-Harris was an investigating officer and that his investigation led to criminal charges against defendant. Thus, the jury would have understood that the lieutenant considered the victims' accounts to be credible, even without the disputed testimony. See *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Regardless, the trial court instructed the jury that it was to decide whom and what to believe. The court also instructed the jury that defendant was presumed innocent, that the prosecutor had to prove the facts beyond a reasonable doubt, and that testimony of police officers should be judged by the same standards used to evaluate the testimony of any other witness. The trial court's instructions, which juries are presumed to follow, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), were sufficient to protect defendant's substantial rights.

## B. DEFENDANT WAS GUILTY OF ATTEMPTED MURDER

Defendant argues that it was plain err to allow Lieutenant Hill-Harris to give his opinion that she was guilty of attempted murder. This argument is based on the following exchange that occurred during direct examination:

> *Q.* Did you receive any specific information regarding the nature of the fire that caught your attention?

> *A.* Yes, the fire was on the porch and it may have been some attempt for [sic] impede the escape of the individuals inside. It may be been some type of *attempted murder possibility* so it was a higher priority for use to get out there because somebody may have been attempted to be killed in relation to this event. [Emphasis added.]

This testimony did not constitute plain error. Lieutenant Hill-Harris did not testify that defendant was guilty of attempted murder. He only explained why this case was given higher priority. Moreover, because defendant was not charged with attempted murder, and the testimony was not offered as a comment on defendant's personal culpability, the challenged statement did not affect defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## C. DEFENDANT WAS A DANGEROUS PERSON

On cross-examination, defense counsel questioned Lieutenant Hill-Harris about arresting defendant at her mother's house. In response to defense counsel's inquiry, Lieutenant Hill-Harris testified that he was present when his partner, Lieutenant Richardson, talked to defendant on the phone and threatened to "kick this mother f*cking door in" if defendant did not come outside. Defense counsel then asked Lieutenant Hill-Harris if he would "kick a door into a house where [he] kn[e]w the person is not present." Lieutenant Hill-Harris explained that defendant had listed the house as her primary residence and they believed she was inside the home. Defendant now complains that Lieutenant Hill-Harris impermissibly expressed his opinion that defendant was a "dangerous person" in the following exchange on redirect examination:

> *Q.* Did you believe that there was some danger that she posed to the community?

> *A.* I did believe.

The lieutenant did not testify that defendant was a "dangerous person," but only referenced "some danger" in the context of explaining why his partner threatened to take a certain action if defendant did not surrender herself. Further, defendant fails to mention her attorney's cross-examination, but it is apparent that the prosecutor's question and the challenged testimony were in direct response to defense counsel's implication that the threat to kick in the door was an inappropriate action to effectuate defendant's arrest. A prosecutor is entitled to fairly respond to issues raised by a defendant. *People v Jones*, 468 Mich 345, 352, n 6; 662 NW2d 376 (2003). Considering the responsive nature of the testimony, defendant cannot establish that any error affected her substantial rights. *Carines*, 460 Mich at 763-764.

## D. DEATH THREATS

Lieutenant Hill-Harris testified that during his interview of McGowan, she showed him "very threatening" text messages that she received from a phone number that McGowan identified as belonging to defendant. Defendant argues that Lieutenant Hill-Harris impermissibly expressed his opinion when he characterized the text messages as death threats. However, the trial court sustained defendant's objection on this ground and instructed the jury to disregard the challenged testimony. The court's instruction was sufficient to cure any error. Defendant does not otherwise explain how she was prejudiced in this instance. The jury was properly left to determine on its own whether defendant's text messages conveying "RIP" and conveying that McGowan's mother was going to bury her could be interpreted as death threats. Defendant has not established that any error affected the outcome of trial.

## E. DEFENDANT WAS A "WILLING PARTICIPANT" IN THE CRIMES

In detailing the criminal investigation, Lieutenant Hill-Harris testified that he submitted a request for warrants for both defendant and Haywood. Defendant argues that the lieutenant then impermissibly expressed his opinion that both women were "willing participants." Again, the trial court sustained defendant's objection to this testimony and she requested no further action. Moreover, the lieutenant's challenged statement concerned his investigation and why he requested arrest warrants for both defendant and Haywood. As previously indicated, given that the lieutenant was called as a prosecution witness and a criminal prosecution was instituted against defendant, the jury would have already understood that the lieutenant believed that defendant was a participant without the disputed testimony. See *Dobek*, 274 Mich App at 71. Thus, defendant has not established that any error affected the outcome of trial.

## F. THE LIEUTENANT'S INTERPRETATION OF DEFENDANT'S STATEMENT

Defendant also takes issue with the following emphasized testimony, which was elicited by defense counsel during cross-examination:

> *Defense counsel:* So, according to your report in this statement Miss Gunn says, *I discussed with someone setting a fire at this house*?
>
> *A.* That's correct.
>
> *Q.* Where does it say that in that statement? Please tell me.
>
> * * *
>
> *A.* I'm going to have to read a nice chunk of it.
>
> * * *
>
> *Q.* That's your interpretation, is that accurate? Cause you don't see the words, I discussed with someone going over there to set a fire, do you?
>
> *A.* She does not use those [sic] phase—she did not use that phrase.
>
> *Q.* *That's your interpretation?*

-5-

*A. That's correct.* [Emphasis added.]

Defendant does not explain how she was prejudiced by her own attorney eliciting from the lieutenant that defendant did not actually make a statement that the lieutenant claimed she had made. In fact, the very issue that defendant raises—that the lieutenant's statement in his report was merely his interpretation—is exactly what defense counsel established when he raised the matter. There was no prejudice.

## G. INEFFECTIVE ASSISTANCE OF COUNSEL

Within this issue, defendant argues that defense counsel was ineffective for failing to object to all of the lieutenant's impermissible opinion testimony. As explained, the admitted testimony either was not improper, or was not prejudicial. Therefore, defense counsel's failure to object was not objectively unreasonable. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Further, given the unchallenged evidence and the trial court's instructions, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. *Id.* Consequently, defendant has not established a claim of ineffective assistance of counsel.

## III. TESTIMONY REGARDING OTHER "BAD" ACTS

Defendant argues that she was denied due process by McGowan's mother's testimony that she had engaged in other violent "bad acts," which defendant maintains warranted a mistrial.

On direct examination by the prosecutor, McGowan's mother, Patricia Lee, testified that she had observed McGowan and defendant's abusive relationship, including defendant's involvement in "[b]ustin' out windows, pouring gasoline around my house, burning up stuff, shootin' " After the jury was excused, defense counsel objected to Lee's testimony as improper under MRE 404(b) and "ask[ed] that the testimony be stricken." The following exchange occurred:

> *The court:* Okay. Well you've asked me to sustain your objection and you've asked me to give a curative instruction and I have granted the relief that you have requested so far.

> *Defense counsel:* Your honor, I ask you to give me—unless you would like for me to inform you of the curative instruction cause partially and specifically I would ask that you give a curative instruction that says, you are definitely to ignore the testimony about the pouring of gasoline at her house, and including any other acts that she's testify to as has testified to thus far.

> *The court:* Okay. So you would like me to sustain the objection—

> *Defense counsel:* Yes.

> *The court:* —and instruct the jury to disregard the testimony that the witness testified to regarding specific prior acts between [defendant] and [] McGowan including, but not limited to the pouring of gasoline?

-6-

> *Defense counsel:* Specifically, but not limited to.

> *The court:* Okay. I think including works just fine, so. All right. *Anything further?*

> *Defense counsel: No.* [Emphasis added.]

After the jury returned, the trial court gave the following jury instruction:

> Ladies and gentleman, I'm directing you to disregard the testimony of Patricia Lee regarding specific acts that occurred between [defendant] and [] McGowan including, but not limited to the testimony about the pouring of gasoline, okay.

Defendant now argues that the trial court should have granted a mistrial based on the challenged testimony and the curative instruction. However, by expressly requesting the remedy that the trial court sustain her objection and give the jury a particular curative instruction, and affirmatively agreeing to proceed with that remedy, defendant has waived any right to challenge the testimony or the trial court's failure to sua sponte order a mistrial. *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Id.* at 216.

Defendant alternatively argues that defense counsel was ineffective for failing to request a mistrial. Because defendant failed to raise an ineffective assistance of counsel claim in the trial court, our review is limited to mistakes apparent from the record. *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Sabin (On Second Remand),* 242 Mich App 656, 658-659; 620 NW2d 19 (2000). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. In doing so, defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *Armstrong*, 490 Mich at 289-290. Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012) (citation omitted), vacated in part on other grounds 493 Mich 864 (2012).

"A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). The record shows that defense counsel made a competent request for the trial court to sustain his objection to the testimony, but realized that the testimony did not support a mistrial. *Id.* Defense counsel was successful in obtaining an instruction for the jury to disregard the objectionable testimony. In its final instructions, the court also directed the jury not to consider any testimony that had been stricken from the record. Because juries are presumed to follow their instructions, *Breidenbach*, 489 Mich at 13, "and instructions are

presumed to cure most errors," *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), defendant has not established that it was objectively unreasonable for defense counsel not to pursue a mistrial, or shown that she was prejudiced by defense counsel's failure to do so, *Armstrong*, 490 Mich at 289-290.

## IV.  IDENTIFICATION EVIDENCE

Defendant next argues that McDonald's in-court identification of defendant was improper because it was based on the prosecutor's "coaching" during trial, and there also was no foundation for McDonald's testimony identifying defendant's voice on telephone calls received by McGowan.  Because defendant did not object to the identification testimony or to McDonald's identification of defendant's voice on the telephone calls,, these issues are unpreserved.  Therefore, we review the issues for plain error affecting defendant's substantial rights.  *Carines*, 460 Mich at 763-764.

### A.  MCDONALD'S IN-COURT IDENTIFICATION OF DEFENDANT

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001).  At trial, McDonald initially identified another person in the courtroom as defendant, but then identified defendant after he was allowed to step off the witness stand for a closer view.  Defendant argues that McDonald's in-court identification was akin to a witness being asked to identify a defendant who is wearing prison garb.  However, McDonald testified that he was familiar with defendant because of her relationship with McGowan.  He explained during his testimony that he could not see defendant while sitting in the witness chair because he is nearsighted and he did not bring his glasses.  He testified, however, that he was wearing his glasses on the night of the incident when he observed defendant outside the house shortly before the fire started.  At that time, he identified defendant by name as one of the perpetrators.  His identification testimony at trial was not the product of an unduly suggestive identification procedure.  It was up to the jury to determine whether McDonald's initial identification of another person affected the reliability and credibility of his later identification of defendant.  See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).  Thus, there was no plain error.  Furthermore, McDonald's identification testimony did not affect defendant's substantial rights considering that defendant admitted being outside McGowan's house on the night of the fire.

### B.  MCDONALD'S VOICE IDENTIFICATION OF TESTIMONY

Likewise, there was no plain error in the admission of McDonald's testimony identifying defendant's voice.  Pursuant to MRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Identification of a voice may be established "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."  MRE 901(b)(5).  Voice identification testimony is competent evidence if it is "reasonably positive and certain," and is based on sufficient knowledge by the witness about the voice. *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983) (citation omitted).  "[S]ome reason must appear to which the witness can

attribute the ability to make the voice identification, of which familiarity and peculiarity are the most common, though not exclusive, examples." *Id.*

McDonald knew defendant because she was McGowan's former girlfriend. McDonald testified that before the fire, defendant repeatedly called McGowan on the telephone while both he and McGowan were in the home. McDonald was able to hear defendant's voice because McGowan used a speaker phone. McDonald unequivocally testified that he recognized defendant's voice. This testimony was sufficient to support McDonald's voice identification testimony. We note that McGowan also indentified defendant as the caller, and that cell phone records indicated that defendant had called McGowan during the time in question. Accordingly, there was no plain error affecting defendant's substantial rights.

## V. HEARSAY EVIDENCE

Defendant next argues that a new trial is required because McGowan's mother was allowed to testify regarding statements that McGowan made to her over the telephone shortly after the fire. Defendant argues that McGowan's statements to her mother were inadmissible hearsay.

Hearsay, which is a statement other than one made by the declarant while testifying at the trial or hearing offered to prove the truth of the matter asserted, is inadmissible at trial unless there is a specific exception allowing its introduction. See MRE 801, MRE 802, and *People v Ivers*, 459 Mich 320, 331; 587 NW2d 10 (1998) (BOYLE, J, concurring). Although the trial court sustained defendant's hearsay objection when the prosecutor initially sought to elicit the hearsay statements from Patricia Lee, the prosecutor proceeded to establish a foundation for admitting the statements under the excited utterance exception to the hearsay rule, MRE 803(2). Defendant did not thereafter object when the statements were introduced. Accordingly, this issue is unpreserved and defendant has the burden of establishing a plain error affecting her substantial rights.[1] *Carines*, 460 Mich at 763-764.

Although defendant argues that McGowan's statements to Lee were inadmissible hearsay, she does not address the admissibility of the statements under the excited utterance exception to the hearsay rule. The excited utterance exception permits the admission of hearsay statements that (1) arise out of a startling event, and (2) are made while the declarant was under the excitement caused by that event. MRE 803(2); *People v Layher*, 238 Mich App 573, 582; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). The focus of the excited utterance rule is the "lack of capacity to fabricate, not the lack of time to fabricate," and the relevant inquiry is one concerning "the possibility for conscious reflection." *People v Smith*, 456 Mich 543, 550-551; 581 NW2d 654 (1998). The key question is whether the declarant was still under the stress of

---

[1] Although defendant objected to one answer—Lee's testimony that "[McGowan] was afraid to go out the door because she was afraid that if she ran out she would be shot"—she did so only on the basis of "[s]peculation," An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *Bulmer,* 256 Mich App at 35.

the event, and the trial court is accorded wide discretion in making that preliminary factual determination. *Id.* at 551-552; see also *Layher*, 238 Mich at 582.

Lee testified that McGowan called her shortly after the fire. Thus, McGowan's statements were made after a startling event. Lee testified that McGowan was upset, crying, and appeared to be under the stress of what had just happened. Thus, there was evidence that McGowan was still under the stress caused by the event when she made the statements to her mother. Because there is an evidentiary basis for finding that the McGowan's statements to Lee qualified for admission as excited utterances under MRE 803(2), defendant has failed to demonstrate a plain error in the admission of the testimony.

## VI. THE PROSECUTOR'S COMMENTS

Defendant next argues that improper comments by the prosecutor denied him a fair trial. Defendant's failure to object to the prosecutor's comments at trial leave this issue unpreserved. We review unpreserved claims of prosecutorial error for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. We will not reverse if the alleged prejudicial effect of the prosecutor's error could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

## A. VOUCHING FOR THE POLICE WITNESSES

Defendant argues that the prosecutor improperly vouched for the credibility of the police witnesses and their investigation in the following emphasized remarks during closing argument:

> Ultimately we have the Defendant's own statement. Three different versions, mind you. First we hear about, I wasn't there. I was at my aunt's house. Then we hear that—and *good police work*. I have to credit Lieutenant Harris and Lieutenant Richardson for just stopping—you know, they knew, no, no, no, there's more here.

> We have two eyewitnesses here. We've got the text witnesses. You know, we don't buy this and we know that the cellphone [sic] records are going to show you were there. I credit them. *They have nothing to gain by tha*t.

> This is police interview tactic 101, okay, and *they're a credit to their profession*. These are not people doing anything inappropriate. *They have nothing to gain here by lying about the course of this interview* and she lied. She lied and it was a blatant lie.

> She gave a false alibi. I was with my aunt all night. Then she begins to change that. Ultimately we hear about the second version. No, yeah, you know, yeah, I left a text message on my cellphone here and, yeah, I was around the block drinking and in the area, but I don't know anything about the house. I don't know anything about that, and again, to their credit they didn't just sit back on that.

> They continued to ask her about it. Eventually she comes yet to a third version, a third version of the events admitting to be there . . . . [Emphasis added.]

A prosecutor may not vouch for the credibility of a witness by conveying that she has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). They may argue the evidence and all reasonable inferences that arise from the evidence, and they need not state their inferences in the blandest possible language. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *Dobek*, 274 Mich App at 66. Further, an otherwise improper remark might not warrant reversal if the prosecutor is responding to the defense counsel's argument. *Dobek*, 274 Mich App at 64.

Viewed in context, the challenged remarks did not suggest that the prosecutor had special knowledge that the police witnesses were credible. The prosecutor's remarks complimenting the police witnesses' persistence in questioning defendant and her argument that the police witnesses had nothing to gain by lying at trial were part of a permissible argument regarding credibility that was focused on countering the defense implication that the officers had engaged in some wrongdoing while interrogating defendant and providing reasons why the police witnesses should be believed. For example, during cross-examination of Lieutenant Hill-Harris, defense counsel elicited that the lieutenant had lied to defendant when they told her that her cell phone records placed her in proximity to the fire, which led to her changing her statement. On redirect examination, the lieutenant explained his training in interview techniques and stated that it is permissible to use the type of technique used in this case. The prosecutor also elicited that the lieutenant had no personal problem with defendant, and that he did not receive any promotion or any other accolades for his work in this case. The prosecutor urged the jury to evaluate the diligence of the police work, discussed the reliability of police witnesses' testimony, and argued that there were reasons from the evidence to conclude that defendant was guilty of the charged crimes. The prosecutor did not refer to any special knowledge, beyond commenting on the evidence presented at trial, to indicate that she knew that the police witnesses were truthful. Accordingly, the prosecutor's arguments were not improper.

Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. Indeed, even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, that testimony from police officers or firefighters must be judged by the same standards used to evaluate the testimony of any other witness, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001).

## B. DENIGRATION OF DEFENSE COUNSEL

Defendant argues that the prosecutor's use of the term "hogwash" during closing argument improperly suggested that her attorney was "intentionally trying to mislead the jury, and that the defense was an embarrassment." A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury. *People v Dalessandro*, 165 Mich App 569, 580; 419 NW2d 609 (1988). The jury's focus must remain on the evidence, and not be shifted to the attorneys' personalities. *Id.* Here, the prosecutor's "hogwash" comment was not directed at

defense counsel, but rather was directed at defendant's final version of the events, in which defendant claimed that she had nothing to do with the fire, that her associate acted alone in starting the fire, and that defendant called her aunt who managed to drive and pick her up before the police or fire department arrived. That characterization was a proper comment on the evidence and reasonable inferences drawn therefrom and, therefore, was not plainly improper. *Bahoda*, 448 Mich at 282; *Dobek*, 274 Mich App at 66. The prosecutor discussed the evidence that supported her argument that defendant's claim was not logical. The use of the term "hogwash" did not make the argument improper. The prosecutor was not required to phrase her argument using the blandest possible language. *Dobek*, 274 Mich App at 66. Moreover, the trial court's instruction that the lawyers' statements were not evidence was sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *Long*, 246 Mich App at 588.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In a related argument, defendant argues that defense counsel was ineffective for failing to object to the prosecutor's remarks in closing argument. Because the prosecutor's remarks were not improper, defense counsel's failure to object was not objectively unreasonable. Further, because the trial court's jury instructions were sufficient to dispel any possible prejudice, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

## VII. OFFENSE VARIABLES 4 AND 16

Defendant next argues that she is entitled to resentencing because the trial court erroneously scored offense variables 4 and 16 of the sentencing guidelines. Defendant did not preserve her scoring challenges by objecting to the scoring of those variables at sentencing. MCL 769.34(10). Accordingly, our review is limited to plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

Ten points may be scored for OV 4 where "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "[T]he victim's expression of fearfulness is enough to satisfy the statute." *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). McGowan testified that she ran in the basement and called 911 after being alerted that defendant and her associate were approaching the house. McGowan thought defendant was there to shoot up her house. After noticing the fire on the front porch, McGowan temporarily was unable to exit the home because the fire was at the front door. She testified that she "almost died." McGowan's mother spoke to McGowan both on the phone and in person shortly after the incident. She described McGowan as upset and crying, and testified that McGowan was under stress from what had occurred. In light of this testimony, the trial court's 10-point score for OV 4 was not plain error.

Five points must be assessed for OV 16 if "the property had a value of $1,000.00 or more but not more than $20,000.00." MCL 777.46(1)(c). One point is scored if "[t]he property had a value of $200.00 or more but not more than $1,000.00." MCL 777.46(1)(d). McGowan testified that, as a renter of the house, she was financially responsible for the fire damage. In requesting

restitution, however, she stated that the amount of damage was limited to $800. In light of this evidence, the trial court's assessment of five points for OV 16 was plain error. The evidence only supported a one-point score for OV 16.

However, the scoring error did not affect defendant's substantial rights because it did not affect the appropriate guidelines range. Indeed, any error in scoring either or both of the two challenged variables would not warrant resentencing. If both OV 4 and OV 16 were assessed zero points, defendant's total OV score would decrease from 65 to 50 points. This scoring adjustment does not affect defendant's placement at OV Level V (50 to 74 points) on the applicable sentencing grid. MCL 777.63. Because any scoring error does not affect the appropriate guidelines range, defendant is not entitled to resentencing. MCL 769.34(10); *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## VIII. *ALLEYNE V UNITED STATES*

Defendant lastly argues that judicial fact-finding by the trial court when scoring the sentencing guidelines variables entitles him to resentencing under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). As defendant acknowledges, this Court rejected this same argument in *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), appeal held in abeyance ___ Mich ___; 846 NW2d 924 (2014). Because we are required to follow *Herron*, see MCR 7.215(J)(1), we reject this claim of error.

Affirmed in part, vacated in part, and remanded for resentencing on Count II consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder