# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACK LEROY WINE, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No. 318822
Calhoun Circuit Court
LC No. 2013-001828-FC

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment. We affirm.

## I. BACKGROUND

The victim, Penelope White, was at home with several people in the middle of the day when the robbery occurred. She heard a disturbance, and then the door to the room she was in crashed opened. Defendant's son, Jack Wine III (Jack III), came into the room and hit her in the head with a fence post that had cleated steel. He hit her so hard that she had a scar on her head months later at the time of trial, and he broke her arm. He continually beat her until she stayed down. Jack III then dragged Penelope to the basement by her hair, and continued to hit Penelope in the face with the pole. He also attacked her daughter, Stephanie. His attack on her was so vicious that Stephanie had a sizable scar on her arm at the time of trial.

Defendant was in the basement, and Penelope surmised that defendant did not want her to get hurt. Jack III was holding a gun. Defendant eventually asked Penelope, "[W]hy did you rip me off?" When she claimed that it was not her but Brittany and another individual, defendant replied, "This is over." Penelope offered them her purse, defendant asked her where it was, and Jack III retrieved it. The men eventually left, and Penelope and Stephanie went to the hospital for their injuries. Penelope's arm was injured so badly that she required surgery, and Stephanie required several stitches.

-1-

Defendant was convicted of armed robbery and was sentenced to 25 to 50 years' imprisonment.[1] He now appeals on several grounds.

## II. NEWLY DISCOVERED EVIDENCE

### A. STANDARD OF REVIEW

"[A] motion for a new trial on the basis of newly discovered evidence must first be brought in the trial court in accordance with the Michigan Court Rules." *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Because defendant did not file a motion for a new trial below, this issue is unpreserved. *Id.* We review unpreserved claims for plain error affecting substantial rights. *People v Cox*, 268 Mich App 440, 450; 709 NW2d 152 (2005).

### B. ANALYSIS

On appeal, defendant first provides a handwritten, notarized statement from a person named Colby M. Mann. Defendant contends that this constitutes newly discovered evidence that warrants a new trial. We disagree.

Mann asserts the following:

I am writing this of my own accord and am not under no threat [sic] of injury and have not been pursuaded [sic] by anybody in any way to write this statement.

During a conversation with Penelope White and Stephanie White they brought up an incident that happened at their house involving Jack Wine III. The stated [sic] that Mr. Wine was going to prison due to their testemony [sic] that he stole a purse from their house. During the conversation they told me that he never really stole the purse or had ever came with a weapon [sic] even. They stated that they were telling the police that story so Mr. Wine would be charged with armed robbery and so the charges would stick. They stated that they wanted custody of a child that Jacks father [sic] had.[2] I know Stephanie and Penelope through a mutual friend and regular run [sic] into them in my neiborhood [sic].

I Colby Michael Mann swear that the information contained in this affidavit is true and will testify to it in the court of law.

---

[1] According to the Michigan Department of Corrections website, Jack III pleaded nolo contendere to armed robbery and is serving a 14-year sentence.

[2] Penelope has two daughters: Stephanie and Brittany. Defendant's wife has a son named Kyle. Brittany and Kyle share a child together.

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). See also *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012) ("motions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor."). Parties are encouraged "to use care, diligence, and vigilance in securing and presenting evidence." *Grissom*, 492 Mich at 312 (quotation marks and citation omitted). "[I]n fairness to both parties and the overall justice system, the law requires that parties secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *Rao*, 491 Mich at 280.

In order to demonstrate that a new trial is warranted based on newly discovered evidence, a defendant must show the following:

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*Grissom*, 492 Mich at 313 (quotation marks and citation omitted).]

While impeachment evidence may constitute newly discovered evidence, our Supreme Court has warned that "newly discovered impeachment evidence ordinarily will not justify the grant of a new trial." *Id.* at 317-318. The Court has cautioned that "[i]t will be the rare case in which (1) the necessary exculpatory connection exists between the heart of the witness's testimony at trial and the new impeachment evidence and (2) a different result is probable on retrial." *Id.* at 318.

Defendant has failed to demonstrate that the evidence he provides on appeal was newly discovered. *Id.* at 313. It is unclear from defendant's motion to remand, his brief on appeal, or Mann's letter how defendant came to know about Mann. Defendant makes no mention of when he discovered Mann's alleged version of events. Additionally, this is relevant for the third prong of the inquiry, namely, that defendant could not have discovered this evidence using reasonable diligence. Defendant has provided no evidence, nor explanation, regarding when he discovered this evidence from Mann or whether he was acquainted with Mann before trial. There is nothing to suggest that defendant, when using reasonable diligence, could not have produced this evidence at trial. As the Supreme Court has recognized, "[t]he defendant carries the burden of satisfying all four parts" of the test articulate *supra*. *Rao*, 491 Mich at 279.

Moreover, a different result is not probable on retrial. *Grissom*, 492 Mich at 313. Although not entirely clear, Mann's statement seems to refer to Jack III, defendant's son, not defendant. According to Mann's convoluted version of events, Penelope and Stephanie concocted this story so that Jack III would go to jail, which would somehow result in obtaining custody "of a child that Jacks father [sic] had." Yet, Mann never claims that Penelope and Stephanie planned to frame *defendant* for the robbery. Thus, the relevance of Mann's statement

is limited. Further, Mann did not identify the child at issue. It would seem to be Kyle's son.[3] However, it is not clear how sending Jack III to jail would matter regarding custody, as Jack III is not the father of the child nor does he have custody. Defendant's wife—not defendant—has custody of this child, which she obtained before marrying defendant. Nor does Mann's account—that this crime was entirely fabricated—account for the fact that Penelope and Stephanie were hospitalized for their injuries. The parties stipulated the admission of medical records. In light of the foregoing, we cannot say that a different result is probable on retrial. *Grissom*, 492 Mich at 313.

Defendant is not entitled to relief based on his claim of newly discovered evidence.

## III. MISSING WITNESS INSTRUCTION

### A. STANDARD OF REVIEW

Defendant next contends that the trial court erred in failing to give the missing witness instruction regarding the absence of Colin Davis.[4] "This Court reviews for an abuse of discretion a trial court's determination whether the missing witness instruction is appropriate." *People v Steele*, 283 Mich App 472, 485; 769 NW2d 256 (2009). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "Reversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).

### B. ANALYSIS

"A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). "The missing witness instruction may be given if a prosecutor fails to secure the presence at trial of a listed witness who has not been properly excused." *Steele*, 283 Mich App at 485 (quotation marks and citation omitted). Pursuant to MCL 767.40a(4): "The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." As our Supreme Court has explained, the decision whether to read the missing witness instruction "will depend on the specific facts of that case." *People v Perez*, 469 Mich 415, 421; 670 NW2d 655 (2003).

---

[3] Kyle is the son of defendant's wife.

[4] There are different spellings of this individual's name throughout the record. To avoid confusion, we refer to the spelling in accordance with the prosecution's witness list.

In the instant case, Colin Davis was a listed witness who did not appear at trial. While defendant requested a missing witness instruction, the trial court denied the request, explaining the following:

> Counsel described to me in chambers that the knowledge of that witness or the testimony of that witness, had he appeared, would have been that he had left before the offense and had not returned until after it. And given that, it—it's apparent to this Court, at least, that the fact that he didn't testify is not of sufficient prejudice to the defendant to justify the giving of the missing witness instructions since his testimony would not have included any observations about the offense or the participants there in.

Defendant first contends that because the prosecution failed to produce the witness, the trial court was *required* to give the missing witness instruction. However, our caselaw makes it clear that the decision whether to give the missing witness instruction is within the court's discretion. *Perez*, 469 Mich at 421. It is a decision to be made on a case-by-case basis. *Id.* Whether the witness would have offered helpful testimony is a relevant consideration, as discussed *infra*. *Id.* at 417-418, 420, 421.

Defendant also contends that the period of time before the offense was critical, and this witness would have illuminated what occurred during that time period. That assertion is mere speculation. There is nothing to suggest that something relevant or critical occurred before the crime. Moreover, the victims provided a detailed account of defendant's crime, as discussed *supra*. Defendant presented no witnesses to rebut the victims' version of events. As this Court has recognized, reversal for failure to provide a jury instruction is warranted only when it is more probable than not that the error was outcome determinative. *McKinney*, 258 Mich App at 163. In light of the relatively limited insight this missing witness could have provided, and the victim's convincing testimony, we cannot say that any error was outcome determinative. *Id.* at 163.

## IV. OFFENSE VARIABLE 4

### A. STANDARD OF REVIEW

Defendant also challenges the trial court's scoring of Offense Variable (OV) 4 at 10 points. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### B. ANALYSIS

Pursuant to MCL 777.34(1)(a), 10 points for OV 4 is warranted when "[s]erious psychological injury requiring professional treatment occurred to a victim." The statute also instructs to "[s]core 10 points if the serious psychological injury may require professional

treatment" although "the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

When a victim testifies that she was fearful during the crime, that is sufficient evidence to support a score of 10 points under OV 4. *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004). See also *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009) ("the victim's expression of fearfulness is enough to satisfy the statute."). Here, Penelope testified that she surrendered her purse to save her life and that of her family. The presentence investigation report indicates that the victim reported to the police that she feared she was going to be killed during the incident. Given the fact that the victim feared for her life, and for the life of her loved ones, we find no error in the trial court's assessment of 10 points. *Apgar*, 264 Mich App at 200.

## V. JURISDICTION

### A. STANDARD OF REVIEW

Next, in his Standard 4 brief, defendant contends that the trial court proceeded to trial without proper jurisdiction. We review *de novo* the question of jurisdiction. *People v Glass*, 288 Mich App 399, 400; 794 NW2d 49 (2010).

### B. ANALYSIS

Defendant first contends that the felony complaint and warrant were defective because they were initiated by an assistant prosecutor rather than the prosecutor. Contrary to defendant's suggestion, an assistant prosecutor has the authority to sign the felony complaint and warrant. MCL 49.42 provides, in relevant part, that an "assistant prosecuting attorney shall . . . perform any and all duties pertaining to the office of prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney[.]" There was no error in the assistant prosecutor's actions.

Second, defendant contends that the felony complaint was defective because it did not contain sufficient information to support an independent judgment that probable cause existed for the felony warrant to be issued. Yet, the complaint and warrant alleged that during the course of committing a larceny of a purse and contents, defendant placed Penelope in fear and possessed a bat and/or stick. These factual allegations were sufficient. MCR 6.101(A); MCR 6.102(C). Moreover, even if we agree that the felony complaint and warrant were defective, this would not justify setting aside defendant's conviction for lack of jurisdiction. "[A]n illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court." *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009)*;* see also *People v Rice*, 192 Mich App 240, 244; 481 NW2d 10 (1991) ("[t]he invalidity of an arrest does not deprive a court of jurisdiction to try a defendant."). Thus, defendant has failed to establish that any defect in the felony complaint or warrant deprived the trial court of jurisdiction. MCR 6.101(A); MCR 6.102(C).

Third, defendant contends that there was no return from district court in the record. MCR 6.110(G). "A circuit court does not acquire jurisdiction until a return is filed by the district court, and jurisdiction is limited to the offense specified in the return." *People v Flowers*, 191 Mich App 169, 172; 477 NW2d 473 (1991). The record indicates that the preliminary examination occurred on June 6, 2013. As defendant acknowledges, there is a "Bind Over/Transfer After Preliminary Examination Felony" form in the record, which is signed by the district court judge. The document states, "Examination was held and it was found that probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed the offense." The form indicates that defendant is bound over to circuit court on the charges in the complaint, minus the counts that had been dismissed. Thus, the circuit court record contains the felony complaint, the felony warrant, the form binding defendant over to the circuit court after the preliminary examination, and the felony information. There was no error evident in the procedure binding the case over to the circuit court.

Fourth, defendant posits that the trial court did not have jurisdiction because the record does not indicate that he was arraigned on the information. However, the register of actions indicates that the arraignment occurred on May 14, 2013. Further, even if he was not arraigned properly, MCR 6.113(A) provides that "[u]nless the defendant demonstrates actual prejudice, failure to hold the arraignment on the scheduled date is to be deemed harmless error." Accordingly, "[a] showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment." *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013). Here, defendant has failed to show that any failure to arraign him on the information was prejudicial. Defendant does not allege that he was deprived of the felony information or that he was unaware of the charges against him. Defendant is not entitled to relief.

Lastly, defendant argues that the felony information was insufficient because it did not describe the charged offense in detail. However, the felony information provided the date of the offenses, a brief description of the nature of defendant's crimes, and the maximum penalty for each offense. This satisfied the requirements of MCR 6.112(D), which only requires the information to set forth "the substance of the accusation against the defendant and the name, statutory citation, and penalty of the offense allegedly committed." Defendant is not entitled to relief.

## VI. PRELIMINARY JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Next, in his Standard 4 brief, defendant asserts that the trial court erred in failing to give complete preliminary jury instructions. We review unpreserved claims of instructional error for plain error affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). An error must have occurred, the error must be plain (i.e., clear or obvious), and the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects substantial rights when it prejudiced the defendant, meaning it affected the outcome of the proceedings. *Id.* "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings'

-7-

independent of the defendant's innocence.'" *Id.* at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

## B. ANALYSIS

Defendant contends that the court did not comply with its duty to give complete preliminary instructions as it did not read the statutes for the charged offenses. The relevant court rule, MCR 2.513(A), provides:

> After the jury is sworn and before evidence is taken, the court shall provide the jury with pretrial instructions reasonably likely to assist in its consideration of the case. Such instructions, at a minimum, shall communicate the duties of the jury, trial procedure, and the law applicable to the case as are reasonably necessary to enable the jury to understand the proceedings and the evidence. The jury also shall be instructed about the elements of all civil claims or all charged offenses, as well as the legal presumptions and burdens of proof. The court shall provide each juror with a copy of such instructions. . . .

Before voir dire, the trial court informed the jury that defendant was charged with armed robbery and first-degree home invasion. The court also informed the jury about the presumption of innocence, the burden of proof, and the definition of "reasonable doubt." It detailed the duties of the jury, such as attending all sessions.

After the jury took its oath, the court gave additional, lengthy instructions. The court informed the jury that the oath it took endures until it reaches a verdict. It also gave the jury a preview of what a criminal trial entails, again mentioned the burden of proof, and told the jury that it would receive final jury instructions. The court instructed the jury that it must accept the law as the court provides and then apply the facts to the law. The court defined "evidence," and informed the jury that it may accord evidence different weight. However, the court encouraged the jurors to keep an open mind, and cautioned that sentencing is not an issue for the jury to decide.

Now on appeal, defendant contends that the failure to comply entirely with MCR 2.513(A) requires reversal. However, defendant never objected below to the preliminary jury instructions, or otherwise indicated that he found them to be deficient. While the trial court did not list the elements of the crimes during the preliminary phase, it clearly instructed the jury on the elements of the crimes during final jury instructions. Defendant raises no challenge to the final jury instructions.[5] Because the jury was properly instructed on the elements of the crime before it began deliberations, defendant has not shown that any error affected his substantial rights. "No structural error occurred because defendant was not deprived of a basic protection." *People v Allen*, 466 Mich 86, 92; 643 NW2d 227 (2002). See also *People v Kowalski*, 489 Mich

---

[5] The jury also received a written document listing the elements of the crimes.

488, 505 n 30; 803 NW2d 200 (2011). "The trial court's instructions, when viewed as a whole, adequately protected defendant's rights." *Carines*, 460 Mich at 771.

## VII. VOIR DIRE

Next, in his Standard 4 brief, defendant posits that he was denied a fair and impartial jury because one of the jurors during voir dire indicated that he was biased against defendant. However, at the close of jury selection, defense counsel said that he was satisfied with the jury. The oath was then given, and the trial began. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503.

Moreover, even if we were to review this issue, defendant is not entitled to relief. One of the prospective jurors indicated that his son's home had been broken into, although his son was not present at the time. While the juror initially indicated that he would let that situation sway him, the following colloquy ensued:

> *Q*. What about that would influence you here, in an unrelated case?
>
> *A*. Be that he was broke into and he lost - - loss of work and loss of property.
>
> *Q*. Sure. And that no doubt is absolutely true, but do you understand that's a separate incident not involving this case and that you'd have to set that aside in this case?
>
> *A*. I understand that.
>
> *Q*. And would you?
>
> *A*. Yes, I would.
>
> *Q*. Alright. You'd be able to then?
>
> *A*. Yes.

Defendant contends that the trial court erred in failing to *sua sponte* excuse the juror. However, "[a] juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986). See also MCL 768.10; see *People v Jendrzejewski*, 455 Mich 495, 518; 566 NW2d 530 (1997) ("prior impressions or opinions, not positive in character, do not mandate disqualification."). The juror ultimately communicated that he would be able to set aside any prior opinions. Thus, defendant has failed to demonstrate that this juror should have been removed, or that the court should have done so *sua sponte*.

## VIII. PROSECUTORIAL MISCONDUCT

## A. STANDARD OF REVIEW

Next in his Standard 4 brief, defendant contends that the trial was rife with instances of prosecutorial misconduct. We review unpreserved claims for plain error affecting substantial rights. *Aldrich*, 246 Mich App at 124-125.

## B. ANALYSIS

Defendant asserts several inconsistencies between the police reports, preliminary examination testimony, and evidence at trial. He characterizes this as an issue of prosecutorial misconduct. However, he has failed to provide any authority for the proposition that he is entitled to a remand because of alleged inconsistencies in the evidence. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008) (quotation marks and citation omitted). Moreover, even if defendant asserted this argument in the context of the sufficiency of the evidence, we have consistently held that conflicts of the evidence are resolved in favor of the prosecution. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Defendant also failed to explain how this is an issue of prosecutorial misconduct. *Petri*, 279 Mich App at 413. There is no evidence in the record that the prosecution intentionally or knowingly introduced false evidence. See *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). Therefore, defendant is not entitled to relief.[6]

## IX. INEFFECTIVE ASSISTANCE OF COUNSEL

## A. STANDARD OF REVIEW

Next, defendant contends in his Standard 4 brief that he was denied the effective assistance of counsel. Whether a defendant received effective assistance of counsel is a mixed question of fact and law, as a "trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). When reviewing a claim of ineffective assistance of counsel that has not been preserved for appellate review, a reviewing court is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

## B. ANALYSIS

---

[6] To the extent that defendant claims he was denied due process because the prosecution knowingly allowed the case to proceed without proper jurisdiction, that argument is meritless as there is no jurisdictional defect warranting reversal. Likewise, the jury was properly instructed on the elements of the crimes before reaching its verdict.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). To establish a claim for ineffective assistance of counsel, a defendant first must establish that "counsel's representation fell below an objective standard of reasonableness." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must show that trial counsel's deficient performance prejudiced his defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 669 (quotation marks and citation omitted); see also *Strickland*, 466 US at 687.

Defendant first contends that his trial counsel rendered ineffective assistance of counsel in failing to remedy the alleged errors he identifies in his Standard 4 brief. Because we have found no merit to any of these claims of error, defendant has not demonstrated that he was denied the effective assistance of counsel. "Counsel is not ineffective for failing to advocate a meritless position." *Mack*, 265 Mich App at 130 (quotation marks and citation omitted).

Defendant also contends that his counsel failed to adequately investigate the case and present essential witnesses, which resulted in the denial of his constitutional right to present a defense. Defendant requests that we remand this case for a hearing pursuant to *People v Ginther*, 390 Mich 436, 444; 212 NW2d 922 (1973). Defendant presents several letters in support of his claim. These handwritten letters are from various individuals claiming to have relevant knowledge regarding the crime. The letters are signed, and some of them are dated, but all but two of them are not notarized nor otherwise authenticated. These "unnotarized statement[s] fail[] to meet the procedural requirements of MCR 7.211(C)(1). That is, not being notarized or otherwise having been taken before a person having authority to administer an oath or affirmation," these documents carry "no more weight than a letter outlining defendant's complaints about his trial counsel. And as such, defendant failed to make a sufficient offer of proof of the evidence to be established at a hearing." *People v Ybarra*, 493 Mich 862; 820 NW2d 908 (2012) (ZAHRA, J. concurring). See also *Sherry v E Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011).

Further, while the statement from Mary Reyes is notarized, she was not present at the victim's house nor did she have any first-hand knowledge of what occurred there. Rather, she only related that she met with defendant and his son after the incident, and that defendant said that someone had come up from the basement and shot at him. No other details were provided. In fact, nothing in Reyes' account necessarily contradicts the victims' testimony, as Reyes provides no detail regarding when the shooting occurred or if the victims were present. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) ("the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense."). Moreover, defendant attached a letter from his defense counsel. Counsel informed defendant that he did, indeed, contact Reyes but determined that she would not provide testimony that would further the defense. See *Dixon*, 263 Mich App at 398 ("decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of

trial strategy, which we will not second-guess with the benefit of hindsight." (Quotation marks and citation omitted)).[7]

The other notarized letter was from Mann. As discussed in the context of newly discovered evidence, there are severe deficiencies in Mann's story that make it improbable that the outcome of the proceedings would have been different. *Vaughn*, 491 Mich at 669. Mann only references the victims' plan to set up defendant's son, Jack III, with no mention of setting up defendant. Further, the implausibility of the plan—setting up Jack III in an attempt to affect the custody of a child that neither defendant nor Jack III has custody of—renders it unlikely that a different result is reasonably probable. Also, Mann's account—that the crime was a complete fabrication—fails to account for the severe injuries the victims suffered.

Therefore, even considering Mann's letter, we cannot say that any error in failing to produce him at trial altered the outcome. *Vaughn*, 491 Mich at 669; *Dixon*, 263 Mich App at 398. In light of the foregoing, we do not find that defendant was denied the effective assistance of counsel or that a remand for a *Ginther* hearing is warranted.[8]

## X. CONCLUSION

Defendant is not entitled to relief based on his claims of newly discovered evidence, instructional error, the scoring of OV 4, jurisdictional defects, juror bias, prosecutorial misconduct, or ineffective assistance of counsel. Nor do we find that a remand for resentencing, a new trial, or an evidentiary hearing is warranted. We affirm.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra

---

[7] Regarding the other individuals defendant claims were important witnesses—Holly Wine, Colin Davis, Jennifer Miner, Phil Hubbard, Matthew McClurg, Delores Ahrndt, and Paula Mannon—defense counsel stated that he investigated these witnesses and ascertained that they would not provide information helpful to the defense.

[8] Defendant contends that his claims of ineffective assistance of counsel fall within the purview of *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). However, as the Michigan Supreme Court recognized in *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), the standard articulated in *Cronic* is for three "rare situations in which the attorney's performance is so deficient that prejudice is presumed." None of the allegations defendant makes in his Standard 4 brief satisfy the standards set forth in *Cronic*.