PEOPLE v DAVENPORT (AFTER REMAND)

Docket No. 271366. Submitted July 17, 2009, at Lansing. Decided
November 3, 2009, at 9:20 a.m.

Gary E. Davenport was convicted following a bench trial in the
Presque Isle Circuit Court of six counts of first-degree criminal
sexual conduct. He appealed, claiming ineffective assistance by
trial counsel, Janet Frederick-Wilson, who had failed to raise an
objection at trial concerning the potential conflict of interest
created when the attorney who had represented defendant at his
preliminary examination, Richard Steiger, joined the Presque Isle
County prosecutor's office before defendant's trial concluded.
The Court of Appeals granted defendant's motion for a remand
for a hearing pursuant to *People v Ginther*, 390 Mich 436 (1973),
to create a factual record regarding the claim of ineffective
assistance of counsel. After the hearing, the trial court, Scott L.
Pavlich, J., ruled that Frederick-Wilson's performance fell below
an objective standard of reasonableness, but that defendant
failed to establish that Frederick-Wilson's error was outcome-
determinative. Accordingly, the trial court denied defendant's
motion for a new trial. Following the *Ginther* hearing, the Court
of Appeals held that although the trial court correctly deter-
mined that defendant failed to show a reasonable probability
that, absent Frederick-Wilson's error, the result of the trial
would have been different, the trial court nevertheless commit-
ted plain error by failing to explore the potential conflict of
interest and determine whether disqualification of the prosecu-
tor's office was warranted. The Court of Appeals noted that,
once defendant showed that a member of the prosecutor's office
had represented defendant in the same or related case, a
presumption arose that members of the prosecutor's office had
conferred about the matter and, to rebut the presumption, the
prosecution had to show that effective screening procedures
were used to prevent improper communications within the
prosecutor's office. The Court of Appeals therefore remanded
the case to the trial court for an evidentiary hearing on the
question. 280 Mich App 464 (2008). On remand, the trial court
conducted an evidentiary hearing and concluded that the prosecu-
tion, through an assistant attorney general, had established that the

prosecutor's office had implemented measures to prevent improper communications and that it consistently followed through with these measures. The trial court determined that Steiger had exchanged no information with anyone within the prosecutor's office about any aspect of defendant's case.

After remand, the Court of Appeals *held*:

1. The trial court correctly ruled that the prosecution, through the assistant attorney general, established that it implemented and followed procedures that prevented improper communications with the prosecutor's office.

2. The trial court correctly concluded that defense counsel's failure to raise the issue regarding the potential conflict constitutes an objectively unreasonable error. However, defendant is not entitled to relief on this issue because he failed to show that he was prejudiced by defense counsel's error and the record does not show that defendant was prejudiced by Steiger's move to the prosecutor's office.

3. No evidence supports defendant's claim that his trial counsel rushed the case to trial. Defendant did not present evidence to overcome the strong presumption that his trial counsel employed sound trial strategy in recommending that defendant waive his right to a jury trial.

4. The trial court correctly held both that defendant's trial counsel's performance fell below an objective standard of reasonableness when she failed to interview several defense witnesses before trial and that defendant failed to establish that he was prejudiced by this conduct.

5. Any error that may have resulted from defense counsel's failure to suppress references to the reasons why defendant was terminated from a previous teaching job did not change the outcome of the trial.

6. Defense counsel's failure to call an expert witness to testify regarding whether defendant's penis has an abnormal shape did not fall below an objective standard of reasonableness.

7. The trial court correctly determined that defendant caused the victim serious psychological injury requiring professional treatment and scored offense variable 4, MCL 777.34(1)(a), at 10 points. The court need not find that the victim actually sought professional treatment. The victim's expression of fearfulness is enough to satisfy the statute. Defendant is not entitled to resentencing.

Affirmed.

SENTENCES — OFFENSE VARIABLE 4.

> A sentencing court need not find that the victim actually sought professional treatment in order to score 10 points under offense variable 4 and may determine that the victim's expression of fearfulness is enough to satisfy the variable's requirement that the victim suffered serious psychological injury requiring professional treatment (MCL 777.34[1][a], [2]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Mark G. Sands*, Assistant Attorney General, for the people.

*Kirsch & Satawa, P.C.* (by *Mark A. Satawa, Stuart G. Friedman*, and *Lisa B. Kirsch Satawa*), for defendant.

AFTER REMAND

Before: SAAD, C.J., and MURPHY and DONOFRIO, JJ.

PER CURIAM.

I. TRIAL COURT PROCEEDINGS ON REMAND

This case is before us following a remand to the trial court for an evidentiary hearing on the question whether the prosecutor's office undertook adequate safeguards to shield the prosecuting attorney, Donald McLennan,[1] from communications about the case from Richard Steiger, an assistant prosecuting attorney who formerly represented defendant, Gary E. Davenport. Steiger acted as defense counsel for Davenport at his preliminary examination but, before trial, he accepted a job as the Presque Isle County assistant prosecutor. The prosecuting attorney's office employed only two attorneys, McLennan and Steiger, and McLennan prosecuted Davenport in the trial court.

---

[1] Donald McLennan is now a probate judge in Presque Isle County.

In our prior opinion, *People v Davenport*, 280 Mich App 464, 470-471; 760 NW2d 743 (2008), we addressed Davenport's claim that his trial counsel, Janet Frederick-Wilson, provided ineffective assistance[2] for failing to raise the issue of Steiger's move to the prosecutor's office:

> We affirm the trial court's ruling that defense counsel's failure to raise this matter constitutes an objectively unreasonable error. Clearly, a potential conflict of interest arose when Steiger joined the prosecutor's office after representing defendant at the preliminary examination. Defense counsel was obligated to protect her client from the potential prejudice inherent in these circumstances. Had she raised a timely objection, the trial court would have been obligated to make an inquiry and fashion an appropriate safeguard.
>
> We also agree with the trial court that defendant failed to show a reasonable probability that, absent defense counsel's error, the result of his trial would be different. However, because during the pendency of this case, defendant's former counsel joined the same two-attorney prosecutor's office that pursued the case against him, we hold that it was plain error for the trial court to fail to explore the matter and to make a ruling that the prosecutor's office employed appropriate safeguards to prevent Steiger from sharing information about defendant's case with McLennan. Indeed, when confronted by an apparent conflict of interest of this magnitude, it is incumbent upon the trial court to fully explore the matter to determine whether disqualification of the prosecutor's office is warranted and whether the failure to do so prejudiced defendant.

We further ruled that "once a defendant has shown that a member of the prosecutor's office counseled him or

---

[2] As we stated in our prior opinion, " '[i]n order to establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different' and the result that did occur was fundamentally unfair or unreliable." *Davenport*, 280 Mich App at 468, quoting *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2001).

represented him in the same or related matter, a presumption arises that members of the prosecutor's office have conferred about the matter." *Id.* at 473. Accordingly, we remanded this case to the trial court for an evidentiary hearing. We further opined:

> We emphasize that the prosecutor's office bears the burden of establishing that it implemented measures to prevent improper communications and that it consistently followed through with these measures. The trial court's inquiry must be thorough and in-depth, and take into consideration the prosecutor's failure to come forward with this matter voluntarily, and the office's ability to effectively quarantine the conflict of interest when the office employs only two attorneys. Unless the trial court finds sufficient evidence that the prosecutor's office consistently undertook adequate safeguards to shield McLennan from the taint of Steiger's conflict of interest, defendant's convictions must be reversed and a new trial ordered. [*Id.* at 475-476 (citation omitted).]

On remand, the trial court conducted a lengthy evidentiary hearing during which an assistant attorney general presented testimony from the staff members employed by the Presque Isle County prosecutor's office when Davenport's case was pending. We hold that the trial court correctly ruled that the prosecutor, through the assistant attorney general, established "that it implemented measures to prevent improper communications and that it consistently followed through with these measures." After reviewing the factors set forth in our prior opinion, the court ruled that, as a result of following the procedures employed by the office, Steiger exchanged no information with McLennan about any aspect of Davenport's case. Though the office maintained no written procedures about how to handle a potential conflict or the Davenport file in particular, it is abundantly clear that both attorneys and all staff

members were informed and understood that Steiger was to have no contact with the Davenport file and that he would not participate in any discussions, interviews, or meetings about the case. Members of the staff all testified that, to their knowledge, Steiger had no contact with the case file and was not present for, and did not participate in, any discussions about the case. Both Steiger and McLennan testified that, after an initial discussion about the potential conflict in the Davenport prosecution if Steiger joined the prosecutor's office, they exchanged no information about the case. Moreover, McLennan testified that his investigation and interviews were completed before Steiger joined the prosecutor's office.

The record further reflects that Steiger immediately disclosed his decision to join the prosecutor's office to Davenport and his wife and he repeatedly assured them that he would not reveal to McLennan anything about his representation of Davenport. Though Davenport's subsequent attorney, Frederick-Wilson, denied that she knew about the conflict, McLennan testified that all the attorneys knew about Steiger's move to the prosecutor's office. Davenport's wife also testified that she received numerous letters from people in the community expressing concern when Steiger became the assistant prosecutor. Under these circumstances, while the prosecutor should have notified the trial court about the potential conflict, it also appears that the defense was aware of the issue and chose not to raise it until after the trial. As in our prior opinion, we reiterate that the trial court correctly concluded "that defense counsel's failure to raise this matter constitutes an objectively unreasonable error." *Davenport, supra* at 470.

We also hold that Davenport is not entitled to relief on this issue because he failed to show that he was

prejudiced by defense counsel's error and, after the trial court explored the matter on remand, the record does not indicate that he was prejudiced by Steiger's move to the prosecutor's office. Again, the prosecution met its burden to show that the prosecutor's office took adequate steps to prevent improper communications and consistently followed through with those steps, and no evidence showed that there were any improper communications about the case.

## II. DEFENDANT'S REMAINING CLAIMS

### A. ASSISTANCE OF COUNSEL

Davenport claims that he was denied the effective assistance of counsel when Frederick-Wilson recommended that he waive a jury trial and when she rushed the case to trial.[3] Davenport maintains that Frederick-Wilson did so because she wanted to finish the trial, and keep her retainer, before she was suspended from the practice of law on June 1, 2006. However, at the *Ginther*[4] hearing, Frederick-Wilson denied that she attempted to fast-track the case and the trial court found no evidence that defense counsel asked for earlier trial dates or otherwise hurried the proceedings. We agree with the trial court that, Davenport's speculation aside, nothing in the record suggests that Frederick-Wilson rushed the case to trial. Further, with regard to his waiver of a jury trial, defendant has not overcome the strong presumption that his counsel employed sound trial strategy, *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). As Frederick-Wilson testified, she was concerned about a jury's emotional re-

---

[3] Our prior opinion erroneously stated that defendant was convicted by a jury. Defendant was actually convicted following a bench trial.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

sponse to the allegations and the victim's potential testimony. No evidence shows that Frederick-Wilson's discussions with defendant about waiving a jury trial had anything to do with speed and it was reasonable for counsel to recommend a bench trial in light of the allegations against defendant about his sexual assaults on a child. On this claim, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness.

We agree with the trial court that defense counsel's performance fell below an objective standard of reasonableness when she failed to interview several defense witnesses before trial. However, while this is troubling, Davenport has not established that he was prejudiced by this conduct. As the trial court noted, had Frederick-Wilson interviewed them, none of the witnesses would have testified differently than they did at trial about any significant issue. Though two witnesses may have testified that, as children sometimes do, the victim had tried to get out of trouble by making up stories, nothing suggests that the victim fabricated his claims of molestation and, in light of the overwhelming evidence of Davenport's guilt, this minor credibility question would not have made a difference in the outcome.

Davenport claims that he was denied effective assistance of counsel because Frederick-Wilson failed to obtain medical or counseling records of the victim. However, those records were not produced at the *Ginther* hearing, so there is no way to determine whether they would have been relevant or would have affected the trial in any way. Accordingly, Davenport has failed to show that Frederick-Wilson's conduct prejudiced him. He also argues that defense counsel should have filed motions to suppress an investigator's testimony regarding Davenport's "grooming" of the victim. Davenport

fails to cite a legal basis to exclude the investigator's testimony, and it appears to have involved nothing more than the obvious fact that defendant showered the victim with expensive gifts. "There is no obligation for a defense attorney to object where such objection would be futile," *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007), and Davenport has not shown any error by Frederick-Wilson in this regard. Davenport complains that counsel also should have attempted to suppress references to the reasons he was terminated from a previous teaching job. Were we to agree with the trial court's determination that defense counsel should have objected to this testimony as an improper reference to a prior bad act, it would not have changed the outcome of the trial. Indeed, the trial judge, sitting as the fact finder, eventually stated that he found the issue to be of no significance.

Davenport maintains that Frederick-Wilson's conduct was unreasonable because she failed to hire an expert to testify about the abnormal shape of his penis. Frederick-Wilson testified at the *Ginther* hearing that, before trial, Davenport's wife told her that Davenport's penis was slightly bent from an injury. However, at trial, Davenport's wife testified that Davenport's penis was so deformed that it actually curled into a tight circle. It was not clear error for the trial court to conclude that the wife's testimony came as a surprise at trial. Further, by stipulation of the parties, an expert was allowed to examine Davenport after his wife testified, and the expert testified that Davenport's penis might be curved, but it would not form a tight circle as described by Davenport's wife. In light of this evidence, and because the testimony of Davenport's wife was a surprise, defense counsel's actions did not fall below an objective

standard of reasonableness when she failed to call an expert to testify about this issue.[5]

### B. SENTENCE

Defendant complains that the trial court improperly scored offense variable (OV) 4 at 10 points. OV 4, MCL 777.34(1)(a), states that 10 points should be scored if the victim suffers "[s]erious psychological injury requiring professional treatment . . . ." The court need not find that the victim actually sought professional treatment, MCL 777.34(2), and the victim's expression of fearfulness is enough to satisfy the statute, *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004). The record reflects that, at sentencing, the prosecutor submitted a receipt for counseling services and he informed the court that, two days before sentencing, the victim "began another series of counselings" with Catholic Human Services. In light of this evidence, as well as Davenport's systematic, repeated abuse of this child over a period of years, the trial court correctly determined that Davenport caused the victim "[s]erious psychological injury requiring professional treatment . . . ." Accordingly, he is not entitled to resentencing.

Affirmed.

---

[5] To the extent Davenport complains that he paid defense counsel $8,000 to obtain expert testimony, this may give rise to a contract dispute between Davenport and his counsel. However, the payment alone does not establish that an expert was necessary for his defense.