*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES ANTHONY DOUGLAS,

        Defendant-Appellant.

UNPUBLISHED
March 23, 2023

No. 359841
Wayne Circuit Court
LC No. 14-005015-01-FC

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

A jury convicted defendant of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion); assault and battery, MCL 750.81; first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(d)(*ii*) (accomplice); and unarmed robbery, MCL 750.530.[1] Following remand for resentencing or for further articulation by the trial court of its reasons for departing from the sentencing guidelines, the court sentenced defendant to 8 to 15 years' imprisonment, each, for CSC-III and unarmed robbery and 23 years, 9 months' to 50 years' imprisonment for CSC-I.[2] Defendant appeals as of right, arguing that he is entitled to be resentenced because the court erroneously scored several offense variables (OV) of the sentencing guidelines. We affirm.

---

[1] Defendant was also found guilty of assault with intent to commit sexual conduct, MCL 750.520g(2), which the trial court vacated at the initial sentencing because it was an alternative to defendant's CSC-I conviction.

[2] Defendant was given 93 days' time served for his assault and battery conviction at the initial sentencing.

## I. FACTS

## A. FACTUAL BACKGROUND

This is the third time that defendant's case has been before this Court. In his first appeal, we recounted the factual background surrounding the crimes as follows:

> Defendants Kejuan Douglas and Charles Douglas were tried jointly, before a single jury. . . .
>
> A jury convicted defendants, who are brothers, of sexually assaulting a 16-year-old female victim inside a van in an isolated Detroit neighborhood on August 16, 2013. Approximately one month before the assault, the victim met Charles on Tagged.com, a free online social website, and on the day in question she decided to ask him for a ride to her Inkster home. The prosecution presented evidence that after Charles picked up the victim in a van, he then picked up Kejuan and another, unidentified man. Charles made several stops, including at a motel, where the victim informed him that she wanted to go home. Charles did not take her home, but instead parked on a dark street. Kejuan pulled the victim into the back of the van, and she was forced to perform fellatio on Kejuan while Charles simultaneously sexually assaulted her from behind. After this, Kejuan forced penile-vaginal sex upon her. When Kejuan finished, the unidentified man sexually assaulted the victim with defendants' encouragement. The victim was ultimately left on the street, but managed to take Charles's phone. As the victim was on the phone with 911, the van returned and Charles chased her to the porch of a house, attempting to retrieve his phone. Charles fled and the homeowner opened the door. DNA recovered from abrasions on the victim and a towel that Charles had used and left at the scene matched Charles's DNA profile. The prosecution also presented evidence that Charles's DNA was matched to DNA obtained in another sexual assault case in 2013, in which that victim, who identified Charles, similarly testified that she met Charles on Tagged.com, that he picked her up, and that he drove her to a house where she was sexually assaulted by him and several other men. . . . Charles, who testified on his own behalf, denied any wrongdoing, and claimed that he engaged in consensual sexual activity with the victim. [*People v Douglas*, unpublished per curiam opinion of the Court of Appeals, issued November 1, 2016 (Docket No. 327354) (*Douglas I*), pp 1-2.]

## B. OVERVIEW OF PROCEDURAL POSTURE

At the initial sentencing, the trial court scored the guidelines for defendant's CSC-I conviction. Defendant's total OV score of 120 points placed him in OV Level IV, and his total prior record variable (PRV) score of 45 points placed him in PRV Level D. The minimum sentencing guidelines range was 171 to 285 months' imprisonment. MCL 777.62. But the court departed from that guidelines range, imposing a sentence of 40 to 90 years. *Douglas I*, unpub op at 5.

In defendant's first appeal, we affirmed defendant's convictions but remanded for a *Crosby*[3] hearing in accordance with this Court's opinion in *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part 500 Mich 453 (2017).[4] But before the trial court held the *Crosby* hearing, our Supreme Court ruled that appellate courts must review upwardly departing sentences for reasonableness under the principle of proportionality, rather than remand to the trial court for *Crosby* hearings. *People v Steanhouse*, 500 Mich 453, 475-476; 902 NW2d 327 (2017) (*Steanhouse II*). Defendant moved for resentencing, asserting that his sentence was unreasonable because it was disproportionate. The court denied defendant's motion and he again appealed. We affirmed defendant's convictions and remanded "for resentencing or for further articulation by the trial court of its reasons for departing from the sentencing guidelines pursuant to *People v Steanhouse*, [504 Mich 969; 933 NW2d 276 (2019) (*Steanhouse III*)]."[5]

On remand, defendant argued that new affidavit testimony undermined the trial court's emphasis on defendant's predatory conduct during the previous sentencing, and established that the sexual contact was consensual. The trial court was unpersuaded. Defendant's total OV score was 85 points.[6] The court noted that the guidelines range remained 171 to 285 months, and sentenced defendant to 8 to 15 years' imprisonment, each, for CSC-III and unarmed robbery, 23 years, 9 months to 50 years' imprisonment for CSC-I, and time served (93 days) for the assault conviction. Defendant now appeals the trial court's resentencing.

## II. ANALYSIS

Defendant argues that the trial court improperly scored OVs 4, 8, 10, 11, and 14. We disagree.

Under the sentencing guidelines, a trial court's factual findings "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted).

---

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

[4] *Douglas I*, unpub op at 6-7.

[5] *People v Douglas*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2019 (Docket No. 346377) (*Douglas II*), p 1.

[6] Defendant's total PRV score increased to 70 points, but it did not change the sentencing grid.

## A. OV 4

Defendant argues that the trial court erroneously assigned a 10-point score for OV 4, which deals with "psychological injury to victim[.]" See MCL 777.34.[7] Ten points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). A trial court should assess 10 points for OV 4 "if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). And a 10-point score is appropriate "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). While actual treatment is not required for scoring OV 4, the trial court may consider evidence that a victim sought counseling. *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). But a trial court may not score OV 4 based on the assumption that a victim of the crime at issue would generally suffer psychological injury. *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017).

In this case, the trial court accepted defendant's allegations that the victim suffered from prior mental health issues and concluded:

> [T]he circumstances of this particular case where she is taken to a place of greater isolation and, and danger to her, she's in a van with three individuals, she is sexually assaulted multiple times and then literally thrown out of the vehicle and then when she tries to, to run to get to a stranger's home for, for help that the Defendant then does, in fact, kind of put—she's put upon by the defendant in order to get his phone back because that's a connection to him.
>
> Regardless of how old any woman would be the thought that this would not be the kind of injury that could cause emotional trauma is, is, is just I think not with any merit whatsoever.

Defendant argues that there is no evidence that the victim suffered a psychological injury. He further asserts that the trial court's assessment was grounded in speculation because the Michigan Department of Corrections (MDOC) was unable to obtain an updated impact statement from the victim and the victim did not testify at the resentencing hearing. When we remanded the matter for resentencing, the court was permitted to consider every aspect of defendant's sentencing de novo, *People v Lampe*, 327 Mich App 104, 112; 933 NW2d 314 (2019), and could consider the entire record, including testimony from the initial sentencing, *Johnson*, 298 Mich App at 131. "[O]ur review of the trial court's scoring of OV 4 is not limited to the reasoning provided by the trial court." *White*, 501 Mich at 164. At defendant's original sentencing hearing, the victim testified:

---

[7] MCL 777.34 was amended by 2018 PA 652, effective March 28, 2019. The amendment does not affect the language at issue here.

This has had a real impact on me because my life was already kind of messed up, but this was really depressing like, because I can't sleep, can't eat. Like school, my grades were messed up.

I had to go to counseling. I'm still going through counseling. I'm just glad that he just can't do this to nobody else no more.

Witness testimony further illustrated the victim's psychological injury. The stranger who helped the victim after the assault testified that the victim was "losing it," hysterical, crying, screaming, and "in a terrible state." One of the responding officers testified the victim "was in a state of disarray, hysterical, [and] crying," throughout the encounter. We find that the record is adequate to support a 10-point score for OV 4.

## B. OV 8

Defendant next argues that the trial erred by scoring 15 points for OV 8. A trial court properly assesses 15 points for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). The statute does not require "that the movement be greater than necessary to commit the sentencing offense." *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017). "A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *People v Chelmicki*, 305 Mich App 58, 70-71; 850 NW2d 612 (2014). For example, when a defendant removes a victim to another location "where the sexual assault was less likely to be discovered," the movement "render[s] the location a 'place of greater danger' or 'a situation of greater danger.' " *Barrera*, 500 Mich at 22.

In assessing 15 points for OV 8, the court stated, "the reality is she was not dropped off at home[,]" or taken to a familiar area. Rather, she was asported to a place of greater danger where she was assaulted and "eventually put out of the vehicle in an area where she had to go and pound on the door of strangers to plead to be rescued." Defendant argues that the victim voluntarily entered the van and, although the van was driven to another area, defendant asserts that the victim was not held captive beyond the time necessary to commit the offense. Although the victim voluntarily entered the van, the record reflects that defendant persuaded the victim to willingly enter his van under the guise of taking her home. But instead of taking her home, he picked up two other assailants, drove to a motel, and eventually parked on a dark residential street before he and his accomplices assaulted the victim and left her in an unknown area where she had to elicit help from strangers. The trial court did not err in assessing 15 points for OV 8.

## C. OV 10

Defendant also challenges the 15-point score for OV 10, which addresses exploitation of a vulnerable victim. A score of 15 points is appropriate if predatory conduct was involved. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), our Supreme Court stated that .OV 10 is properly scored at 15 points when the following inquiries are answered in the affirmative:

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

"Predatory conduct" is behavior that is "predatory in nature, e.g., lying in wait and stalking," that "precedes the offense, and is directed at a person for the primary purpose of causing that person to suffer from an injurious action." *People v Huston*, 489 Mich 451, 462, 464; 802 NW2d 261 (2011) (cleaned up). This includes conduct that "created or enhanced" a victim's vulnerability by gaining a victim's trust, and exploiting that trust to create an opportunity for sexual aggression. *People v Barnes*, 332 Mich App 494, 503-504; 957 NW2d 62 (2020). And preoffense conduct of waiting for an opportunity to be alone with a victim in an isolated location is sufficient to constitute predatory conduct. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).

Defendant concedes that there was evidence of exploitation of the victim's youth, which would support a 10-point score for OV 10. But defendant contends the evidence does not support a 15-point score because the victim initiated the contact. The court acknowledged that the evidence reflected that the victim initiated the contact, but the court found that defendant did not take her to her home as she asked. Instead, he picked up two other assailants, drove to a motel without the victim's consent, and drove her to a secluded area where she was sexually assaulted. The court found this conduct to be predatory. The court found additional support in the testimony from a previous victim who maintained that she was assaulted by defendant and others under similar circumstances. We find no error in the court's scoring of OV 10.

### D. OV 11

Defendant next argues that the trial court erred by assessing 25 points for OV 11. In scoring OV 11, a trial court may not count a sexual penetration that formed the basis for the conviction, MCL 777.41(2)(c), but may score all other 'sexual penetrations of the victim by the offender arising out of the sentencing offense,' MCL 777.41(2)(a)." *People v Baskerville*, 333 Mich App 276, 297; 963 NW2d 620 (2020).

Defendant argues that this variable should have been scored at zero because the court could not count the penetration underlying his CSC-I conviction (the sentencing offense), the penetration underlying his CSC-III conviction (a separate offense), or any penetrations by any other offender. This Court addressed a similar argument in *Lampe*, 327 Mich App at 118:

> First, defendant argues that because he received two convictions for CSC-III, neither of the two penetrations resulting in conviction could be considered when assessing points for OV 11. However, this Court has repeatedly rejected this argument. In particular, this Court has concluded that "OV 11 requires the trial court to exclude the one penetration forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC." All other sexual penetrations arising from the sentencing offense, including penetrations resulting

in separate CSC-I or CSC-III convictions, are properly considered under OV 11. [footnote and citations omitted).]

In scoring OV 11 for the CSC-I offense, the court could not consider defendant's conduct as an accomplice underlying the CSC-I conviction. MCL 777.41(2)(c). But the court properly considered the penetration[8] underscoring defendant's CSC-III conviction. *Lampe*, 327 Mich App at 118. We find that the court did not err by assessing 25 points for OV 11.

### E. OV 14

Finally, defendant argues that the trial court erroneously assigned a 10-point score for OV 14, which provides that, if a defendant is "a leader in a multiple offender situation," 10 points are assessed. MCL 777.44(1)(a). The court should consider the "entire criminal transaction" when scoring OV 14. MCL 777.44(2)(a). If there were three or more offenders involved, as in this case, "more than 1 offender may be determined to have been a leader." MCL 777.44(2)(b). We have defined "leader" as the "guiding or directing head of a group." *People v Ackah-Essien*, 311 Mich App 13, 39; 874 NW2d 172 (2015) (citations and quotation marks omitted). We have noted that "[t]o 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017) (citation and quotation marks omitted; alteration in original). "[F]or purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Id.* (citation and quotation marks omitted).

Considering the entire criminal transaction, the evidence supports the trial court's determination defendant was a leader. Defendant drove the van, picked up the victim and his fellow assailants, and chose where to go. While another assailant may have been the one who first initiated the sexual assaults, because there were three offenders, "more than 1 offender may be determined to have been a leader." MCL 777.44(2)(b). Defendant's overall guidance and coordination is sufficient to support the court's determination that he was a leader in the offenses. Accordingly, the trial court did not err by assessing 10 points for OV 14

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood

---

[8] MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." The victim testified that defendant's penis went "inside of the lips."