*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 30, 2023

Plaintiff-Appellee,

v

No. 362819
Wayne Circuit Court
LC No. 21-001710-01-FH

ROY LORENZO WILLIAMS-BEY,

Defendant-Appellant.

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Following a bench trial, the trial court found defendant Roy Lorenzo Williams-Bey guilty of aggravated stalking, MCL 750.411i(2), and sentenced him as a third-offense habitual offender, MCL 769.11, to serve 2 to 10 years in prison. Williams-Bey now appeals as of right his conviction and sentence. We affirm his conviction but vacate his sentence and remand to the trial court for resentencing.

## I. BACKGROUND

This arises out Williams-Bey's repeated harassment of the victim, ST, including during, and in violation of, a personal protection order (PPO). Williams-Bey and ST had known each other for more than 10 years as of trial, were in an off-and-on relationship, and shared a minor child (a daughter) together. ST gave birth to their daughter in 2012. In March 2017, there was a custody dispute that, according to ST, "got pretty nasty in the end," though ST indicated that their relationship had "deteriorated" even before their daughter was born. On July 2, 2018, ST obtained a PPO against Williams-Bey because he refused to comply with a court order limiting his contact with ST. Though the order limited his contact with her to child exchanges at a police station, Williams-Bey would follow ST from the police station and appear uninvited at her residence and her mother's residence. ST testified that his behavior "[t]errified" her. The PPO against Williams-Bey was in effect from July 2, 2018, through December 31, 2018.

On the morning of December 12, 2018, between "dropping the kids off at school" and "going to work," ST went to a Dunkin' Donuts in Detroit, "not far" from her son's daycare. ST had her son with her inside the Dunkin' Donuts. While at the counter inside, ST received a phone

-1-

call from a blocked number. She answered the call and knew "[i]mmediately" that it was Williams-Bey. He "breathed into the phone" and told ST "you can run but you can't hide. I'm always goin' be able to find you." ST looked outside and saw Williams-Bey's car (a black Mercedes) backed into a parking spot, allowing him to see into the Dunkin' Donuts. ST indicated that she saw Williams-Bey "[p]retty much during, simultaneously" with the phone call she received. ST thought Williams-Bey "might have tried to get [her] to [go] out to his car," but she told him to come inside. She was "a regular" at the Dunkin' Donuts and she wanted to have witnesses present for any interaction with Williams-Bey. He refused to go inside, however, stating, "Naw bitch . . . . I could have got you but this [is] a Green Light location."[1] ST called the police, but Williams-Bey left after his phone call with ST and before the police arrived. Seeing Williams-Bey at the Dunkin' Donuts made ST feel "[t]errified," "exhausted, "disbelief," "frustration," and "fear . . . ."

The court admitted the surveillance footage into evidence and the video was played in court. Williams-Bey denied that it was his vehicle shown in the video. He testified that although he owned a vehicle similar to the one in the video, he had gifted it to his son and was no longer driving it. He indicated he had purchased a different vehicle and that his son could not drive the vehicle because he was too young. According to Williams-Bey, the vehicle was parked at his home on the day of this incident.

Williams-Bey also sent text messages to ST over several months in 2018. These text messages ranged from derogatory to threatening in nature. Williams-Bey conceded that the text messages came from his phone number but denied that they were sent in 2018 with the intent to harass or intimidate ST. He instead insisted that the text messages related to the custody battle and were sent in 2017. ST testified that she made a police report about these text messages.

The trial court, in rendering its verdict, indicated it would not consider many of the text messages because they were sent before the PPO went into effect. It did, however, consider three text messages ST received during the period of the stalking allegations. These included two received in September 2018 and one received in October 2018, which, according to the trial court's recitation of the content of the text messages,[2] stated, respectively:

> [**September 2018**.] Your concern is with [H].[3] Your concern with [H] is
> you hung up on me when I called you to discuss our daughter. You feel the need
> to always conference someone into our business. Yo daddy don't run shit over here

---

[1] "Project Green Light Detroit" is a Detroit Police Department (DPD) surveillance program, through which Detroit commercial properties consent to DPD installing real-time camera connections that send surveillance video footage from the property locations directly to DPD.

[2] The text messages are not in the lower court file but the trial court read the content of the messages when it rendered its verdict at trial. Neither party disputes the trial court's recitation of the content of the three relevant text messages.

[3] It is unclear from the record whether "H" refers to Williams-Bey and ST's daughter or ST's father.

nor does his old ass want to see me. I'll deal with him myself. You don't have the heart into what matters the most.

[**September 2018**.] [T]here is every time I feel like you—the money you manage to fuck it up, but my bills are paid zero balance so I can collect my unemployment—and never leave the house. You on the other hand have to be so difficult. Continue to take care of Alex while my daughter and—hates you. Oh yeah or you didn't.

[**October 2018**.] [B]itch I was trying to be nice to yo ass by taking you to lunch to discuss our course of action for our kids, shaking my head. Never again. And she texted back leave us alone. He says be on time with my daughter. Now carry on. Call—goodnight. [Footnote added.]

At the end of the third day of trial, the trial court found Williams-Bey guilty of aggravated stalking, concluding that the evidence "overwhelmingly support[ed]" ST's version of events. The court found that Williams-Bey sent the September 2018 and October 2018 text messages in violation of the PPO then in effect, and that he went to Dunkin' Donuts to harass or intimidate ST. The trial court also found that Williams-Bey's contacts with ST caused her to suffer emotional distress, and that his conduct would cause a reasonable person to feel intimidated, threatened, or harassed. It further found that Williams-Bey committed the stalking in violation of a restraining order of which he had actual notice.

Williams-Bey's presentence investigation report (PSIR) recommended a guidelines minimum range of 7 to 34 months. This was based on a total prior record variable (PRV) score of 45 points and a total offense variable (OV) score of 15 points, with OV 10 being the only variable scored. These scores placed Williams-Bey in PRV Level D and OV Level II.

At sentencing, ST gave her victim-impact statement describing the effect of Williams-Bey's conduct on her life and how she has adapted since his conviction, including the fear he used to "bully and intimidate" her and the fact that she was attending counseling as a result. The parties argued over the proper scores for OVs 4, 5, and 19. Over defense counsel's objections, the court assessed 10 points for OV 4, 15 points for OV 5, and 10 points for OV 19 (in addition to the 15 points for OV 10 recommended in the PSIR). This brought Williams-Bey's total OV score to 50 points, moving him to OV Level V and resulting in a guidelines minimum range of 14 to 43 months. The trial court sentenced Williams-Bey as a third-offense habitual offender to serve 2 to 10 years in prison for his aggravated-stalking conviction. This appeal followed.

## II. THE PROSECUTION PRESENTED SUFFICIENT EVIDENCE ESTABLISHING AGGRAVATED STALKING

Williams-Bey argues that the prosecution did not present sufficient evidence establishing that he was involved in the incident at Dunkin' Donuts in December 2018 or that he sent text messages to ST when the PPO was in effect. We disagree.

### A. STANDARD OF REVIEW

We review de novo a challenge to whether sufficient evidence supports a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When determining in the context of a bench trial whether the prosecution presented sufficient evidence to support a conviction, we "must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). In doing so, however, we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*. at 619. In a bench trial, "[f]actual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992).

## B. LAW AND ANALYSIS

"Aggravated stalking consists of the crime of stalking . . . and the presence of an aggravating circumstance . . . ." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002) (quotation marks and citations omitted). MCL 750.411i(2) governs aggravated stalking and provides, in relevant part:

> (2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:
>
> (a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction. [MCL 750.411i(2)(a).]

MCL 750.411i(1)(e) defines "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." A "[c]ourse of conduct" is "a pattern of conduct composed of a series of 2 or more noncontinuous acts evidencing a continuity of purpose." MCL 750.411i(1)(a).

Conduct constitutes "harassment" when it is "directed toward a victim" and "includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). It does not, however, "include constitutionally protected activity or conduct that serves a legitimate purpose." *Id*. "Unconsented contact," in turn, means "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411i(1)(f). Relevant here, "unconsented contact" includes "[f]ollowing or appearing within the sight of that individual," "[a]pproaching or confronting that individual in a public place or on private property," "[c]ontacting that individual by telephone," or "[s]ending mail or electronic communications to that individual." MCL 750.411i(1)(f)(*i*), (*ii*), (*v*), and (*vi*).

Taken together, these definitions form six elements. See MCL 750.411i(1) and (2). See also M Crim JI 17.25. The prosecution must prove: first, that Williams-Bey committed two or

-4-

more willful, separate acts of unconsented contact; second, that the contact would cause a reasonable individual to suffer emotional distress; third, that the contact actually caused ST to suffer emotional distress; fourth, that the contact would cause a reasonable individual to feel terrorized, frightened, intimidated, threatened, harassed or molested; fifth, that the contact actually caused ST to feel terrorized frightened, intimated, threatened, harassed, or molested; and finally, at least one act of unconsented contact was committed in violation of a court order (among other aggravating factors that elevate the offense from stalking to aggravated stalking). See MCL 750.411i(1) and (2). See also M Crim JI 17.25.

The prosecution presented sufficient evidence permitting a reasonable factfinder to conclude that Williams-Bey engaged in aggravated stalking. ST had a PPO against Williams-Bey that was in effect from July 2, 2018, through December 31, 2018. She testified that on December 12, 2018, Williams-Bey appeared outside of the Dunkin' Donuts she was inside with her son. ST's testimony established that Williams-Bey called her from a private number, and harassed and threatened her. This call and his conduct violated ST's PPO against him. Though Williams-Bey claimed that the Mercedes outside the Dunkin' Donuts was not his and that he was at home sleeping at the time, the trial court found that Williams-Bey went to the Dunkin' Donuts in December 2018 to harass or intimidate ST, thereby rejecting Williams-Bey's version of events and concluding otherwise. We will not disturb that credibility determination on appeal. See *Kanaan*, 278 Mich App at 619.

Williams-Bey contended below that he did not have notice of the PPO against him, noting that the signature on the PPO shown to him on cross-examination was not his. This Court has, however, previously declined to construe "actual notice" as the equivalent of "personal service" for purposes of MCL 750.411i(2)(a). See *Threatt*, 254 Mich App at 506-507. The prosecution therefore did not have to prove that Williams-Bey was personally served with a copy of the PPO to provide actual notice. Instead, it simply had to present evidence that Williams-Bey had knowledge of the PPO. *Id*. Here, ST testified that she paid to have the PPO served on Williams-Bey by the Oakland County Sheriff's Office. The prosecution also presented evidence that an officer served Williams-Bey with the PPO on July 2, 2018. Williams-Bey acknowledged at trial that ST had a PPO against him, though he could not recall the year in which she obtained it. Viewed in a light most favorable to the prosecution, the evidence was sufficient to support a finding that Williams-Bey had actual notice of the PPO, which he violated when he texted ST and appeared at the Dunkin' Donuts. The prosecution therefore presented sufficient evidence supporting a finding that Williams-Bey committed aggravated stalking when he "[violated] . . . a restraining order" and that he had "received actual notice of that restraining order . . . ." MCL 750.411i(2)(a).

The prosecution also presented sufficient evidence establishing that Williams-Bey engaged in stalking within the meaning of MCL 750.411i(1)(e). Williams-Bey repeatedly harassed ST when he appeared at the Dunkin' Donuts and contacted and threatened her by telephone, and when he sent her threatening text messages. See MCL 750.411i(1)(d) (defining "harassment"); MCL 750.411i(1)(f)(*i*), (*v*), and (*vi*) (defining "unconsented contact" as including "appearing within the sight of that individual," "[c]ontacting that individual by telephone," and "[s]ending mail or electronic communications to that individual," respectively). ST testified that she reported Williams-Bey's PPO violations to the police because she was scared and "needed somebody to watch [her] back." Her testimony supports the trial court's finding that Williams-Bey's willful,

separate, nonconsensual communications with her would "cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested" and that the communications actually caused her "to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). We therefore conclude that sufficient evidence supported Williams-Bey's aggravated stalking conviction.

## III. SENTENCING

Williams-Bey also argues that he is entitled to resentencing because the trial court improperly scored OVs 4 and 5. The prosecution concedes that the trial court improperly assessed 15 points for OV 5. We disagree with respect to OV 4, but agree with respect to OV 5. Because the scoring error with respect to OV 5 affects Williams-Bey's appropriate guidelines range, he is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

### A. STANDARD OF REVIEW

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v McFarlane*, 325 Mich App 507, 531-532; 926 NW2d 339 (2018). Clear error exists when we are definitely and firmly convinced the trial court made a mistake. *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). Under the sentencing guidelines, the trial court's factual determinations "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### B. THE TRIAL COURT PROPERLY SCORED OV 4

Williams-Bey argues that the trial court erred by assessing 10 points for OV 4 because the evidence did not support a finding that ST suffered serious psychological harm. We disagree.

OV 4 addresses "psychological injury to a victim." MCL 777.34(1). A sentencing court is required to "[s]core 10 points if the serious psychological injury may require professional treatment," though "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). For example, "[t]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "[T]he scoring of OV 4 cannot," however, "be based on the assumption that people *typically* suffer psychological injury when they are victims of the type of crime in question; and while relevant, a victim's fear *during* the crime does not by itself justify the scoring of OV 4." *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019) (emphasis in original).

"When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony." *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). It "may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *Id.* Though not required for scoring OV 4, evidence that a victim actually sought counseling may also be considered. See *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009).

The trial court did not clearly err by assessing 10 points for OV 4. ST wrote a victim-impact statement that she read at Williams-Bey's sentencing hearing. She indicated that the purpose of her statement was "to illustrate the fear, distrust, manipulation and perversion" Williams-Bey used "to bully and intimidate [her]," "[r]obbing [her] of [her] peace, safety, independence and most importantly a healthy environment to raise a newborn child and toddler." ST also stated that she was in therapy "working daily on the healing process." See *Davenport*, 286 Mich App at 200. Williams-Bey dismisses ST's participation in therapy as being an "upbeat revelation" that does not warrant a conclusion that she suffered serious psychological injury. He also contends that there was a "considerable lapse of time" between his 2018 conduct and his 2022 sentencing, contending below that ST could have been in therapy for "many other reasons." Contrary to Williams-Bey's suggestion, however, a victim need not seek therapy for OV 4 to appropriately be assessed 10 points. See MCL 777.34(2). But a victim's participation in therapy is a relevant consideration. *Davenport*, 286 Mich App at 200. Here, ST's victim-impact statement indicated, in the context of discussing Williams-Bey's conduct, that she had been attending therapy "working daily on the healing process." Nothing in the record or in ST's statement suggests she was in therapy related to anything other than Williams-Bey's conduct; indeed, she mentioned her participation in therapy in the context of discussing the effect Williams-Bey's conduct has had on her life. We therefore reject any suggestion that ST may have been attending therapy for some other reason. ST's statement also supports a score of 10 points for OV 4 because she indicated that Williams-Bey's conduct caused her to be fearful and deprived her of feelings of safety, independence, and peace. The trial court therefore did not clearly err by assessing 10 points for OV 4.

## C. THE TRIAL COURT IMPROPERLY SCORED OV 5

Williams-Bey argues, and the prosecutor concedes, that the trial court erred by assessing 15 points for OV 5. We agree.

OV 5 relates to "psychological injury to a member of a victim's family." MCL 777.35(1). "OV 5 is [only] scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). See also *id*. at 184 n 11 (contrasting scoring of OV 4 and OV 5). This case did not involve homicide or a homicide-related crime. The trial court therefore erred as a matter of law by assessing 15 points for OV 5.

This scoring error entitles Williams-Bey to resentencing. He was in Crime Class E and had a prior record variable (PRV) score of 45 points, placing him in PRV Level 4. See MCL 777.66. The trial court assessed 10 points for OV 4, 15 points for OV 5 (erroneously), 15 points for OV 10, and 10 points for OV 19. Williams-Bey's total OV score was thus 50 points, putting him in OV Level V. Reducing Williams-Bey's total OV score by 15 points for the erroneous scoring of OV 5 reduces his total OV score to 35 points, changing his OV Level to IV. This reduces his sentencing guidelines range from 14 to 43 months to 12 to 36 months. See MCL 777.66 and MCL 777.21(3)(b). Williams-Bey is thus entitled to resentencing. *Francisco*, 474 Mich at 89-91.

We affirm Williams-Bey's conviction, but vacate his sentence and remand to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood