*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NICHOLAS PAUL STAMPER,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2026
1:48 PM

No. 370540
Jackson Circuit Court
LC No. 2022-000703-FC

Before: RIORDAN, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to commit murder, MCL 750.83; assault with intent to maim, MCL 750.86; mayhem, MCL 750.397; and tampering with evidence, MCL 750.483a(6)(b). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 20 to 30 years' imprisonment for the assault-with-intent-to-commit-murder charge, concurrent with 5 to 15 years' imprisonment each for the assault-with-intent-to-maim, mayhem, and tampering-with-evidence charges. On appeal, defendant argues that he is entitled to resentencing because the trial court erred when it scored offense variables (OV) 3, 4, and 7. We affirm.

## I. UNDERLYING FACTS

On February 22, 2022, police officers found the victim, defendant's coworker, completely naked from the waist down and curled in the fetal position in the bathtub of a motel room bathroom. The victim was severely beaten, his right ear had been torn from his head, his eyes were swollen shut, and he was barely conscious and unable to speak. There was blood on the bathroom floor, bedroom carpet, and ceiling of the room he was found in.

The victim was transported to a local hospital where it was determined that he had suffered significant injuries including: "a traumatic subdural hemorrhage with loss of consciousness, a fracture of the orbital floor on the left and right sides, malar fracture, fracture of the left orbital wall, contusion on the neck, traumatic pneumothorax, and a partial traumatic amputation of the right ear." The victim underwent several surgeries to treat his injuries, was comatose at one point,

and had several surgeries to reconstruct his ear. The victim also suffered a traumatic brain injury that affected several of his cognitive functions like memory and communication.

The investigation into the assault revealed that defendant had assaulted the victim and left him half naked in the motel room bathtub for over 36 hours. During the assault, defendant sent his coworker/friend numerous pictures and videos that he had taken. The pictures and videos depicted the victim severely beaten and bloody, defendant covered in blood, and blood throughout the motel room. The videos also depicted defendant punching or kicking the victim in the head as he laid barely conscious on the bathroom floor, covered in blood. All of the photographs and videos were admitted into evidence at trial without objection.

As stated, a jury found defendant guilty of assault with intent to murder, assault with intent to maim, mayhem, and tampering with evidence. At sentencing, defendant objected, in relevant part, to the scoring of OVs 3, 4, and 7. The trial court assessed 25 points for OV 3, 10 points for OV 4, and 50 points for OV 7. Defendant's minimum sentencing guidelines range was calculated at 171 to 356 months' (about 14 to 30 years) imprisonment.[1] The trial court sentenced defendant as stated earlier. This appeal followed.

## II. OFFENSE VARIABLES

Defendant argues that the trial court erred when it assessed 25 points for OV 3, 10 points for OV 4, and 50 points for OV 7. We disagree.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "A scoring decision is not clearly erroneous if the record contains *any* evidence in support of the decision." *People v Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012) (cleaned up). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Ziegler*, 343 Mich App at 411 (cleaned up).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "The trial court may also consider victim-impact statements, and may make reasonable inferences from evidence in the record." *People v Montague*, 338 Mich App 29, 55, 979 NW2d 406 (2021).

---

[1] See MCL 777.21(3)(a); MCL 777.16d; MCL 777.62.

## A. OV 3

Defendant argues the trial court erred by assessing 25 points for OV 3. Defendant contends that the trial court should have assessed 10 points because there was no evidence the victim's injury was life threatening or permanently incapacitating. OV 3 is scored when there "is physical injury to a victim." MCL 777.33(1). "OV 3 designates the number of points to be assessed for physical injury to a victim." *People v Johnson*, 342 Mich App 90, 94; 992 NW2d 668 (2022), citing MCL 777.33(1). The statute requires an assessment of 25 points for OV 3 when "[l]ife threatening or permanent incapacitating injury occurred to a victim[,]" MCL 777.33(1)(c), and 10 points when "[b]odily injury requiring medical treatment occurred to a victim[,]" MCL 777.33(1)(d). Although the statute does not define "life threatening," this Court has explained that it "require[es] some evidence indicating that the injuries were, in normal course, potentially fatal." *People v Chaney*, 327 Mich App 586, 590-591; 935 NW2d 66 (2019). Because "there are many conditions that if not treated can become life-threatening," this "review must take into account the effect of medical treatment." *Id*. at 591 n 4. The statute also does not provide a definition of "permanently incapacitating." This Court has determined that an assignment of 25 points is warranted when the evidence showed that the victims "had been severely injured in ways that continued to significantly incapacitate them in their daily lives and that it was very possible they would never fully recover." *People v Teike*, 348 Mich App 520, 527; 19 NW3d 733 (2023). Medical testimony is not required to establish that an injury is permanently incapacitating or life threatening. *People v McCuller (On Remand)*, 479 Mich 672, 697 n 19; 739 NW2d 563 (2007).

The trial court's assessment of 25 points for OV 3 was supported by a preponderance of the evidence. The record demonstrated that the victim suffered a traumatic subdural hemorrhage. The victim was rendered unconscious and was in a coma for a significant period of time. The victim suffered changes to several cognitive functions, including his memory and his ability to communicate. At the time of sentencing, the victim was still participating in a therapeutic program for traumatic brain injuries. The evidence demonstrated that the victim had been severely injured in a way that continued to significantly incapacitate him in his daily life. Although the victim had made some improvement since the incident, it was possible that he would never fully recover.

Defendant took several videos of himself violently beating the unconscious and defenseless victim. He also photographed the bloody aftermath of the violent beatings. The videos show defendant mercilessly striking the victim's bloody head to the tile floor of the bathroom multiple times. The videos and photographs also depict the victim bleeding from the head, neck and elsewhere. This evidence in conjunction with that highlighted above demonstrate beyond question that the victim suffered life-threatening and permanently disabling injuries. The trial court correctly scored 25 points for OV 3.

## B. OV 4

Defendant next argues the trial court erred by assessing 10 points for OV 4. Defendant contends that the trial court should have assessed 0 points because there was no evidence the victim suffered serious psychological injury. OV 4 is scored when there is "psychological injury to a victim." MCL 777.34(1). OV 4 is assessed 10 points when a "[s]erious psychological injury requiring professional treatment occurred to the victim[.]" MCL 777.34(1)(a). OV 4 is assessed 0 points when "[n]o serious psychological injury requiring professional treatment occurred to the

victim[.]" MCL 777.34(1)(c). However, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). While actual treatment is not required for scoring OV 4, the trial court may consider evidence that a victim sought counseling. *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). But a trial court may not score OV 4 based on the assumption that a victim of the crime at issue would generally suffer psychological injury. *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017).

The trial court's assessment of 10 points for OV 4 was supported by a preponderance of the evidence. The victim testified at trial that he still suffered from flashbacks and nightmares of the assault (two years after the assault), that he had been going to therapy sessions, that he was "still working on" feeling like how he felt before the assault, and that he was engaging in a program called "Magnolia House" that also included therapy. This testimony clearly indicates that the victim suffered a serious psychological injury beyond the trauma expected of defendant's assault and that he sought and obtained professional treatment for that injury. On this record, we are not definitely and firmly convinced that the trial court made a mistake by assessing 10 points for OV 4.

### C. OV 7

Defendant further argues that the trial court erred by assessing 50 points for OV 7. Defendant contends that the trial court should have assessed 0 points because there was no evidence that he engaged in aggravated physical abuse. There is zero merit to this assignment of error. OV 7 is scored when there is "aggravated physical abuse." MCL 777.37(1). OV 7 is assessed 50 points when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a). Absent such conduct, the score will be zero. MCL 777.37(1)(b).

"A trial court can assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *People v Hardy*, 494 Mich 430, 439-440; 835 NW2d 340 (2013). The four categories in OV 7 that justify a score of 50 points are distinct alternatives. *Id*. at 441; *People v Walker*, 330 Mich App 378, 389-390; 948 NW2d 122 (2019). In this case, the trial court found that defendant's actions fell under the ground of "excessive brutality." Contrary to defendant's assertion, there is no requirement that the prosecution establish that defendant engaged in "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." *Walker*, 330 Mich App at 389-390. "In other words, if a defendant treated a victim with excessive brutality, 50 points should be scored under OV 7 even if the defendant did not intend to substantially increase the victim's fear and anxiety." *Id*. at 389. The statute does not define "excessive brutality." This Court has defined "excessive brutality" to mean "savagery or cruelty beyond the 'usual' brutality of a crime." *Id*. at 391 (cleaned up).

The trial court's determination that defendant treated the victim with excessive brutality is uncontradicted by the evidence. The videos taken by the defendant depict him violently punching, kicking, and stomping on the unconscious and helpless victim's blood-covered head while

shouting at the victim. The videos demonstrate defendant's clear intention to make the victim suffer and show beyond question his excessive brutality directed against the victim.

The victim sustained significant trauma to his head resulting in a traumatic brain injury and bleeding in his brain, as well as fractures of his cheekbones and the amputation of his ear. Photos and videos of the victim's injuries were admitted at trial, including videos of defendant kicking and punching the victim in the head while he lay unconscious or unmoving on the floor. The evidence revealed that defendant left the victim lying in a bathtub, half naked and bleeding, for over 36 hours. There was also evidence that defendant may have shaved the victim's head at some point during the assault. The record supports the trial court's determination that defendant engaged in excessive brutality. See *id*.[2]

Affirmed.

/s/ Michael J. Riordan
/s/ James Robert Redford
/s/ Sima G. Patel

---

[2] In *Walker*, the defendant was convicted of second-degree murder after "beating his neighbor to death." *Id*. at 384-385. The *Walker* Court concluded that a preponderance of the evidence supported the trial court's finding that the defendant treated the victim with excessive brutality:

The evidence indicated that the victim was frail and weak from having suffered a series of strokes. The victim sustained at least eight areas of blunt-force trauma to the head that were caused by multiple blows. In addition, the victim's nose had been struck and had flattened against his face. The medical examiner also testified that the victim's injuries were consistent with someone either having smashed the victim's head against the floor or having struck the back of the victim's head as he lay face down on the floor. The victim had multiple areas of bleeding underneath his scalp and on the surface of his brain. The swelling and bruises to defendant's hands and elbows indicated that defendant did not simply strike the victim with his fists. By defendant's own admission, he repeatedly struck the victim as he lay face down on the floor either stunned or unconscious. [*Id*. at 391.]